# Exhibit A
## *(State Court Pleadings)*

ELECTRONICALLY FILED - 2016 Oct 31 10:23 AM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

| | | |
|---|---|---|
| STATE OF SOUTH CAROLNA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF SPARTANBURG | ) | |
| | ) | |
| Kevin Cantrell and Anne Marie Cantrell, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **SUMMONS** |
| | ) | |
| New Penn Financial, LLC, Avenue 365 | ) | |
| Lender Services, Jake Brown, Shell Point | ) | |
| | ) | |
| Defendants. | ) | |

**TO THE ABOVE DEFENDANTS**

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the Complaint on the undersigned at this office located at 233 South Pine Street, Post Office Box 5663, Spartanburg, South Carolina 29304, within thirty (30) days after the service hereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint.

Dated at Spartanburg, South Carolina this October 31st, 2016

The Ward Law Firm, PA
Attorneys for Plaintiff

*s/Jason M. Imhoff*
Jason M. Imhoff (SC Bar No: 69355)
The Ward Law Firm, PA
PO Box 5663
Spartanburg, SC 29304
Telephone (864) 582-3075
Facsimile (864) 585-3090

ELECTRONICALLY FILED - 2016 Oct 31 10:23 AM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

STATE OF SOUTH CAROLNA      )      IN THE COURT OF COMMON PLEAS
                                  )

COUNTY OF SPARTANBURG       )
                                  )

Kevin Cantrell and Anne Marie Cantrell,  )
                                  )

             Plaintiffs,    )
                                  )

v.                           )      **COMPLAINT**
                                  )

New Penn Financial, LLC, Avenue 365  )
Lender Services, Jake Brown, Shell Point  )
                                  )

           Defendants.  )
_____)

      Plaintiffs, Kevin Cantrell and Anne Marie Cantrell, complaining of the Defendants, New Penn Financial, LLC, Avenue 365 Lender Services, Jack Brown, and Shell Point (hereinafter "Defendants"), will show unto the court and allege as follows:

      1.     Kevin Cantrell and Anne Marie Cantrell are the owners of a home located at 323 Seabreeze Way, Lyman, South Carolina.

      2.     Kevin Cantrell is a veteran and qualified for a VA loan for the residence located at 323 Seabreeze Way, Lyman, South Carolina

      3.     In late 2015 or early 2016, Mr. Cantrell received a solicitation from New Penn Financial to refinance his Veteran's Administration Home Mortgage with New Penn Financial at a lower rate.

      4.     Mr. and Mrs. Cantrell contacted New Penn Financial and chose to refinance the home at a lower interest rate with cash out to pay off debt.  New Penn Financial, LLC identifies its address as 4000 Chemical Road, Suite 200, Plymouth Meeting, PA, 19462.

      5.     The Cantrells were provided with numerous documents and packages from New Penn Financial outlining the terms of the loan.  They were also asked to execute and return

ELECTRONICALLY FILED - 2016 Oct 31 10:23 AM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

numerous documents including, but not limited to, authorizations to release social security numbers, a credit inquiry explanation letter, a borrower's certificate and authorization, and a South Carolina Attorney and Insurance Preference Disclosure, which they returned to New Penn Financial.

6.     When filling out the South Carolina Attorney and Insurance Preference Disclosure the Cantrells chose attorney Whit Bishop as their closing attorney.

7.     The Cantrells' closing was delayed and some of the terms of that closing were also changed at the last minute.

8.     During the process of obtaining the loan for the property through New Penn Financial, the Cantrells were directed to and worked with Jake Brown, Mortgage Consultant, MNLS# 247725 who had an email account of jdbrown@newpennfinancial.com.

9.     Additionally, during the process of obtaining the loan, the Cantrells began receiving correspondence and documents from Avenue 365 Lender Services.  No person explained or identified Avenue 365 Lender Service's role in the new loan process or its relationship with New Penn.

10.     After the closing, the Cantrells were directed to make the mortgage payments to Shell Point which they have continued to do.

11.     New Penn Financial described itself as "a direct mortgage lender" which is able to provide some of the "fastest service in the mortgage industry without sacrificing our dedication to customer service."

12.     On the date of the closing, the Cantrells were visited by attorney Ryan Breckenridge, who offered no identification or explanation that he was acting as the Cantrells' attorney, on their behalf, or that he was an attorney at all.  In fact, during the closing he

2

ELECTRONICALLY FILED - 2016 Oct 31 10:23 AM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

introduced himself only as a notary and did not explain that he was the closing attorney in the case.

13.     Within all of the documents, including authorizations to disclose financial and personal information nowhere is the relationship between New Penn, Avenue 365, Shell Point, or Ryan Breckenridge identified, explained, disclosed, or described.

14.     During the closing process the Cantrells assumed that the closing documents had been sent to the Law Office of Whit Bishop and that he had reviewed and signed off on those documents.   In fact, no closing package or documents were ever sent to Whit Bishop and neither the Cantrells nor Attorney Whit Bishop were aware of that fact until Mr. Cantrell contacted Mr. Bishop subsequently on an unrelated matter.

15.     Nowhere within the voluminous documents sent to the Cantrells were the Cantrells made aware that they did not have an option to obtain their own lawyer or that a separate company other than New Penn Financial would be accessing and reviewing their financial records and companies other than New Penn Financial would be preparing the closing package and acting as the closing attorney in contravention of the Cantrells' wishes.

16.     In contravention of the Cantrells' written choice of Whit Bishop as their closing attorney for the loan, Avenue 365 sent the final settlement package to South Carolina Attorney Robert Ryan Breckenridge, without notice to the Cantrells.

17.     Robert Ryan Breckenridge was approved and assigned by New Penn Financial, LLC and Avenue 365 and, upon information and belief, Shell Point.

18.     In a published opinion, filed April 20, 2016 Attorney Breckenridge received a public reprimand by the Supreme Court of South Carolina with details of similar improper relationship between a lender, Title Company, and the closing company.

ELECTRONICALLY FILED - 2016 Oct 31 10:23 AM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

19.    Mr. Breckenridge did not disclose to the Cantrells that he was splitting attorney's fees with anyone else, offer the Cantrells a dual representation disclosure form or make any other disclosure, and instead told the Cantrells that he was simply a notary.

20.    As a result of a similar type of transaction Mr. Breckenridge received a public reprimand for, among other things, "failure to explain the scope of his representation to [Clients] and shared a fee with a non-lawyer."  Further, the Supreme Court found that Mr. Breckenridge did not comply with Rule 407 SCACR which requires "a lawyer who supervises [a residential real estate closing] process must, at a minimum, explain [the disbursement] process of the clients and ensure they understand the lawyer's limited role in the transaction does not include receipt and disbursement of funds."  The Court found that "in essence, Respondent was using a rubber stamp for a non-lawyer, out of state organization with no offices in the State of South Carolina whose involvement was not disclosed to the Respondent's clients.  This Court has insisted on lawyer-directed real estate closings in order to protect the public.  Respondent's method of handling his client's business provided no real protection of his clients and no attorney record of the transactions by which to verify the details of the closing.

21.    As the closing occurred in Spartanburg County, South Carolina, jurisdiction and venue are appropriate in Spartanburg, South Carolina

## FOR A FIRST CAUSE OF ACTION
### (Fraud in the Inducement, Fraud, Constructive Fraud)

22.    Each and every allegation in the preceding defenses not inconsistent herewith are realleged and adopted for the purpose of this defense.

23.    Upon information and belief, Defendants are not separate arm's length entities with an appropriate system of checks and balances in the residential lending forum, but rather are

ELECTRONICALLY FILED - 2016 Oct 31 10:23 AM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

the same or related companies working collectively to obtain customers and profits while intending to give the appearance that each company is separate and working for the borrower.

24.    Each company, individually and collectively, works to minimize costs and increase profits to the detriment of the borrower by relying on illegal, unethical, or fraudulent procedures, associations, and fees, including, but not limited to directing borrowers to sister companies, ignoring or failing to offer the choice of outside counsel or brokers, and working in direct contravention of South Carolina law, codes, and ethical standards to increase profits.

25.    Upon information and belief, the Defendants knew or should have known that directing borrowers to sister companies without disclosing the true financial relationships between those companies, ignoring borrower's choice of attorney, utilizing unethical and illegal out of state closing companies, and using counsel with a public reprimand for the same or similar conduct was illegal, unethical, fraudulent, and dishonest.

26.    Defendants intentionally and willfully made material misrepresentations of fact to Plaintiffs concerning their services and intentionally and willfully withheld material information from Plaintiffs regarding their role in the process, their financial ties and benefits, their intentions to avoid the eyes and oversight of outside counsel, and failed to disclose that the manner in which they advertised, marketed, obtained, processed, and shared business was intended solely to increase profits at the expense of the Plaintiffs.

27.    Plaintiffs had a right to rely upon Defendants'' representations and omissions in connection with the note, contract, mortgage, and the agreement and have been damaged by Defendants' fraudulent conduct

### FOR A SECOND CAUSE OF ACTION
**(Unfair Trade Practices)**

ELECTRONICALLY FILED - 2016 Oct 31 10:23 AM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

28.     Each and every allegation in the preceding defenses not inconsistent herewith are realleged and adopted for the purpose of this defense.

29.     The actions of Defendants described above constitute deceptive acts and/or practices in the conduct of trade and/or commerce which have an adverse impact on the public interest.

30.     Plaintiffs' deceptive acts and practices are capable of repetition in that they actively engage in property loans, closings, and mortgages in the State of South Carolina.

31.     Defendants' unfair and deceptive acts constitute violation of South Carolina Unfair Trade Practices Act at S.C. Code § 39-5-10, *et. seq.*

32.     As a direct and proximate cause of Defendants' deceptive acts and practices, Plaintiffs have suffered actual and consequential damages.

33.     Defendants' deceptive acts and practices constitute willful and knowing violations of S.C. Code § 39-5-10, *et. seq.* Plaintiffs are therefore entitled to three times actual damages, plus interest, costs, and attorneys' fees, for which they hereby sue.

## FOR A THIRD CAUSE OF ACTION
### (Negligence)

34.     Each and every allegation in the preceding defenses not inconsistent herewith are realleged and adopted for the purpose of this defense.

35.     Defendants owed a duty to provide clients and customers with correct information to comply with their contracts, obligations, requirements, statutes, and regulations and owed a duty to act in good faith, perform due diligence, provide honest and accurate information, and investigate the status of its subcontractors and information provided by said subcontractors during and before closings.

ELECTRONICALLY FILED - 2016 Oct 31 10:23 AM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

36.    Defendants breached its duty to these Plaintiffs in that it provided incorrect information or failed to provide any information, failed to investigate, failed to research, and failed to oversee the companies and attorneys closing loans on its behalf and failed to provide proper notices, failed to analyze its duties pursuant to contract, code, statues, regulation, or otherwise, and failed to perform due diligence or otherwise acted unreasonably.

37.    Said breaches of its duties have damaged Plaintiffs and proximately caused damage to Plaintiffs for which they should be compensated.

## FOR A FOURTH CAUSE OF ACTION
### (Violation of South Carolina Consumer Protection Code)

38.    Each and every allegation in the preceding defenses not inconsistent herewith are realleged and adopted for the purpose of this defense.

39.    Plaintiffs are consumers under the South Carolina Consumer Protection Code and is entitled to the rights and liberties contained therein.

40.    Defendants have breached the South Carolina Protection Code in the following particulars, including, but not limited to:

    a)    § 37-5-201, et seq (including but not limited to 202, 203, 301, 302)

    b)    § 37-7-116

    d)    § 37-7-117

    e)    § 37-7-118

    f)    § 37-10-102

    g)    § 37-10-105

    h)    § 37-22-110, et seq

    i)    § 37-2-101, et seq

    j)    § 37-3-302

ELECTRONICALLY FILED - 2016 Oct 31 10:23 AM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

k)      § 37-2-309

l)      § 37-3-308

42.     Due to Plaintiffs' willful and continued wrongful acts, and violation of the S.C. Consumer Protection Code Defendants has been and continues to be damaged.

## **FOR A FOURTH CAUSE OF ACTION**

43.     Each and every allegation in the preceding defenses not inconsistent herewith are realleged and adopted for the purpose of this defense.

44.     Defendants owed a fiduciary duty to Plaintiffs such that they were bound in equity and good conscience were bound to act in good faith and with due regard to act in the interest of the Plaintiffs.

45.     Defendants breached their fiduciary duty to the Cantrells as stated herein and proximately caused damage to the Cantrells.

WHEREFORE, Plaintiffs pray for the following relief:

(a)     that Plaintiffs be granted judgment against Defendants in a sum to be determined by jury for both actual and punitive damages, treble damages, statutory damages, attorneys' fees, for the cost of this action, interest and for such other and further relief as this Court may be just and proper;

(b)     for the costs of this action from parties other than Plaintiffs; and

(c)     for such other and further relief as this court may deem to be just and equitable.

ELECTRONICALLY FILED - 2016 Oct 31 10:23 AM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

THE WARD LAW FIRM, PA

*s/Jason M. Imhoff*
Jason M. Imhoff (SC Bar #69355)
PO Box 5663
Spartanburg, SC 29304
(864) 582-3075
jimhoff@wardfirm.com
*Attorneys for Plaintiffs*

October 31, 2016

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | |
| | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF SPARTANBURG | ) | SEVENTH JUDICIAL CIRCUIT |
| | ) | |
| Kevin Cantrell and Anne Marie Cantrell, | ) | Civil Action No.  2016-CP-42-03923 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **DEFENDANTS' ANSWER TO** |
| New Penn Financial, LLC, Avenue 365 | ) | **COMPLAINT** |
| Lender Services, Jake Brown, Shell | ) | |
| Point, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing (improperly captioned respectively as "New Penn Financial, LLC" and "Shell Point," and hereinafter, "New Penn"), Avenue 365 Lender Services, LLC (improperly captioned as Avenue 365 Lender Services, and hereinafter "Avenue 365"), and Jake Brown (collectively, "Defendants") hereby respond to the Complaint filed by Kevin Cantrell and Anne Marie Cantrell ("Plaintiffs").  Except as specifically admitted herein, each and every allegation in Plaintiffs' Complaint is expressly denied.

## FOR A FIRST DEFENSE

Defendants' Answer is subject to, and does not waive, the arguments set forth in its Motion to Dismiss, which is being filed simultaneously herewith and is incorporated herein by reference. Pursuant to Rule 12(b)(6) of the South Carolina Rules of Civil Procedure, Plaintiffs' causes of action should be dismissed for failure to state a claim as detailed in the Motion to Dismiss.

## FOR A SECOND DEFENSE

1.    Defendants admit the allegations of Paragraph 1.

2.    Defendants admit that Plaintiff Kevin Cantrell is a veteran. Further responding to Paragraph 2, Defendants admit that Kevin Cantrell obtained a VA loan for purchase of 323

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

Seabreeze Way in Lyman, South Carolina 29365 (the "Property"). Defendants are without knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2, and therefore, deny them.

3.     Responding to Paragraph 3, Defendants admit that in February 2016, New Penn mailed correspondence to the Property regarding refinancing a mortgage loan. Further responding, Defendants crave reference to the solicitation referenced in this Paragraph and deny any allegations of Paragraph 3 inconsistent therewith. Defendants deny the remaining allegations of Paragraph 3.

4.     Responding to Paragraph 4, Defendants admit that New Penn received a call from the number associated with Plaintiffs' account, that Kevin Cantrell refinanced his mortgage loan on the Property with New Penn at a 3.750% interest rate, that the loan proceeds paid off other debt, and that Plaintiffs received cash. Further responding, Defendants admit that 4000 Chemical Road, Suite 200, Plymouth Meeting, PA, 19462 is New Penn's mailing address. Defendants deny any remaining and inconsistent allegations of Paragraph 4.

5.     Responding to Paragraph 5, Defendants admit that New Penn provided Kevin Cantrell with and requested him to return a loan application package prior to closing that included letters and disclosures required by federal and South Carolina law, including the South Carolina Attorney and Insurance Preference Disclosure ("Attorney Preference Form"). Defendants deny that New Penn provided Anne Marie Cantrell a loan application package. Further responding, Defendants crave reference to the letters and disclosures referenced in this Paragraph and deny any allegations of Paragraph 5 inconsistent therewith. Defendants are without knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 5 and, therefore, deny them.

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

6.      Responding to Paragraph 6, Defendants crave reference to the Attorney Preference Form mentioned in this Paragraph and deny any allegations of Paragraph 6 inconsistent therewith.

7.      Defendants deny the allegations in Paragraph 7.

8.      Responding to Paragraph 8, Defendants admit that Jake Brown is a licensed mortgage loan originator for New Penn; his Nationwide Mortgage Licensing System Number is 247725, and he has an email address of jdbrown@newpennfinancial.com.  Further responding to Paragraph 8, Defendants admit that Jake Brown assisted with the mortgage loan refinance. Defendants deny any remaining allegations in Paragraph 8.

9.      Responding to Paragraph 9, Defendants admit that Avenue 365 corresponded with Plaintiffs.  Defendants deny any remaining and inconsistent allegations of Paragraph 9.

10.      Responding to Paragraph 10, Defendants admit that Plaintiffs were told at closing to pay Shellpoint, a division of New Penn, as the mortgage servicer for the mortgage loan refinance loan.

11.      Responding to Paragraph 11, Defendants state that Plaintiffs have not identified the source of the alleged statement and therefore, Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 11 and deny them. Defendants crave reference to the source of the quoted material in Paragraph 11.

12.      Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 12 and, therefore, deny them.

13.      Defendants deny the allegations of Paragraph 13.

14.      Responding to Paragraph 14, Defendants admit that no documents were sent to Whit Bishop.  Further responding to Paragraph 14, Defendants state that New Penn and Avenue 365 retain South Carolina-licensed attorneys who are responsible for performing, reviewing, or

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

supervising, including any or all of those actions, the title examination, document preparation, and closing, among other things.  Defendants are without knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14 and, therefore, deny them.

15.     Defendants deny the allegations of Paragraph 15.

16.     Responding to Paragraph 16, Defendants admit that Avenue 365 sent the final settlement package to a South Carolina lawyer, Robert Ryan Breckenridge.  Further responding to Paragraph 16, Defendants crave reference to the Attorney Preference Form and the final settlement documents and deny any allegations inconsistent therewith.  Defendants are without knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16 and, therefore, deny them.

17.     Responding to Paragraph 17, Defendants state that New Penn and Avenue 365 retain South Carolina-licensed lawyers to supervise and perform loan closings in accordance with South Carolina law.  Defendants deny any allegations inconsistent herewith.

18.     Responding to Paragraph 18, Defendants crave reference to the opinion referred to by Plaintiffs, issued by the Supreme Court of South Carolina on April 20, 2016, and deny any allegations inconsistent therewith.

19.     Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 19 and, therefore deny them.

20.     Responding to Paragraph 20, Defendants deny that Plaintiffs have accurately quoted the referenced opinion from the Supreme Court of South Carolina.  Further responding, Defendants crave reference to the opinion and deny any allegations inconsistent therewith.  In addition, to the extent the allegations are directed to Robert Ryan Breckenridge, Defendants are

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

without knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 20 and, therefore deny them.

21.     Defendants admit the allegations in Paragraph 21.

### FOR A SECOND DEFENSE TO THE FIRST CAUSE OF ACTION
#### (Fraud in the Inducement, Fraud, Constructive Fraud)

22.     Responding to Paragraph 22, Defendants incorporate and allege their responses to the preceding paragraphs as if set forth fully herein.

23.     Defendants deny the allegations of Paragraph 23.

24.     Defendants deny the allegations of Paragraph 24.

25.     Defendants deny the allegations of Paragraph 25.

26.     Defendants deny the allegations of Paragraph 26.

27.     Defendants deny the allegations of Paragraph 27.

### FOR A SECOND DEFENSE TO THE SECOND CAUSE OF ACTION
#### (Unfair Trade Practices Act)

28.     Responding to Paragraph 28, Defendants incorporate and allege their responses to the preceding paragraphs as if set forth fully herein.

29.     Defendants deny the allegations of Paragraph 29.

30.     To the extent this allegation is intended to apply to Defendants, Defendants deny the allegations of Paragraph 30.

31.     Defendants deny the allegations of Paragraph 31.

32.     Defendants deny the allegations of Paragraph 32.

33.     Defendants deny the allegations of Paragraph 33.

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

### FOR A SECOND DEFENSE TO THE THIRD CAUSE OF ACTION
#### (Negligence)

34.     Responding to Paragraph 34, Defendants incorporate and allege their responses to the preceding paragraphs as if set forth fully herein.

35.     Defendants deny the allegations of Paragraph 35.

36.     Defendants deny the allegations of Paragraph 36.

37.     Defendants deny the allegations of Paragraph 37.

### FOR A SECOND DEFENSE TO THE FOURTH CAUSE OF ACTION
#### (Violation of South Carolina Consumer Protection Code)

38.     Responding to Paragraph 38, Defendants incorporate and allege their responses to the preceding paragraphs as if set forth fully herein.

39.     Defendants admit the allegations of Paragraph 39 only to the extent consistent with the term as codified under the South Carolina Consumer Protection Code, S.C. Code Ann. § 37-1-301(10).  Defendants deny the remaining allegations of Paragraph 39.

40.     Defendants deny the allegations of Paragraph 40, including all subparts.

41.     The Complaint did not include a Paragraph 41, and therefore, no response is required.

42.     To the extent this allegation is intended to apply to Defendants, Defendants deny the allegations of Paragraph 42.

### FOR A SECOND DEFENSE TO THE [FIFTH] CAUSE OF ACTION
#### (Breach of Fiduciary Duty)

43.     Responding to Paragraph 43, Defendants incorporate and allege their responses to the preceding paragraphs as if set forth fully herein.

44.     Defendants deny the allegations of Paragraph 44.

45.     Defendants deny the allegations of Paragraph 45.

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

46.     Defendants deny the allegations contained in the Paragraph beginning with "WHEREFORE," and deny that Plaintiffs are entitled to any relief they seek.

### FOR A THIRD DEFENSE
**(Failure to State a Claim)**

47.     Defendants would show that Plaintiffs have failed to state a claim upon which relief may be granted; therefore, the Complaint must be dismissed pursuant to Rule 12(b)(6) of the South Carolina Rules of Civil Procedure.  Defendants have filed a separate motion asserting this defense and refer to and incorporate it by reference.

### FOR A FOURTH DEFENSE
**(Pleading Requirements)**

48.     Plaintiffs' Complaint fails to meet the pleading requirements of Rule 9(b) of the South Carolina Rules of Civil Procedure.

### FOR A FIFTH DEFENSE
**(South Carolina Unfair Trade Practices Act (SCUTPA) Defenses)**

49.     Defendants would show that Plaintiffs' SCUTPA claim is barred, in whole or in part, by application of each and every available common law and statutory defense available to a claim brought thereunder, including, but not limited to, application of S.C. Code Ann. § 39-5-40.

### FOR A SIXTH DEFENSE
**(Good Faith)**

50.     Defendants made good faith efforts to comply fully with the law.

### FOR A SEVENTH DEFENSE
**(Bona Fide Error)**

51.     If any violation of any statutory or common law duty occurred, and the same is denied, it was unintentional or the result of bona fide error notwithstanding the maintenance of policies and procedures reasonably adapted to avoid such errors.

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

## FOR AN EIGHTH DEFENSE
### (Failure to Mitigate)

52.     Plaintiffs' claims are barred, in whole or in part, for their failure to mitigate any damages.

## FOR A NINTH DEFENSE
### (Lack of Injury)

53.     Plaintiffs have not suffered an injury in fact that provides a basis for claims for monetary relief or judgment.

## FOR A TENTH DEFENSE
### (Comparative Negligence, Contributory Negligence, Assumption of Risk)

54.     Defendants would show that Plaintiffs' claims are barred by the doctrines of comparative negligence, contributory negligence, and/or assumption of risk.

## FOR AN ELEVENTH DEFENSE
### (Waiver, Estoppel, Laches, Ratification, Consent)

55.     Plaintiffs' claims are barred by the equitable doctrines of waiver, estoppel, laches, ratification, and consent.

## FOR A TWELFTH DEFENSE
### (Lack of Duty)

56.     Defendants would show that they had no common law, contractual, or statutory duty to Plaintiffs.

## FOR A THIRTEENTH DEFENSE
### (Lack of Proximate Cause)

57.     Plaintiffs have not suffered any damages as a proximate result of the alleged actions of Defendants.

## FOR A FOURTEENTH DEFENSE
### (Lack of a Special Relationship)

58.     Defendants would show that they lack a special relationship with Plaintiffs.

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

## FOR A FIFTEENTH DEFENSE
### (South Carolina Consumer Protection Code ("SCCPC") Defenses)

59.     Defendants would show that Plaintiffs' SCCPC claim is barred, in whole or in part, by application of each and every available common law and statutory defense available to a claim brought thereunder.

## FOR A SIXTEENTH DEFENSE
### (Standing)

60.     Defendants would show that Plaintiffs lack standing to assert the causes of action alleged in the Complaint.

## FOR A SEVENTEENTH DEFENSE
### (Substantial Compliance)

61.     Defendants would show that Plaintiffs' claims are barred because Defendants substantially complied with applicable statutory requirements, and the doctrine of substantial compliance bars the recovery Plaintiffs seek.

## FOR AN EIGHTEENTH DEFENSE
### (Contract)

62.     Defendants would show that the terms and conditions of the agreement(s) between the parties, which are incorporated herein by reference, are a complete defense to this action.

## FOR A NINETEENTH DEFENSE
### (Justification)

63.     Defendants would show that Plaintiffs' claim is barred because any actions taken by it or procedures followed by it were justified.

## FOR A TWENTIETH DEFENSE
### (Intervening Actor)

64.     Any damages allegedly sustained by Plaintiffs, which are denied, were caused only by the acts or omissions of entities or persons other than Defendants, which acts or omissions

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

constitute the intervening and superseding cause of the Plaintiffs' alleged damages and bar the claims against Defendants.

### FOR A TWENTY-FIRST DEFENSE
#### (Economic Loss Rule)

65.     Defendants would show that Plaintiffs' claims are barred by the economic loss rule.

### FOR A TWENTY-SECOND DEFENSE
#### (Private Right of Action)

66.     Defendants would show that Plaintiffs do not have a private right of action for recovery.

### FOR A TWENTY-THIRD DEFENSE
#### (Set Off, Offset, Recoupment)

67.     Defendants would show that Plaintiffs' claims are subject to set off, offset, or recoupment.

### FOR A TWENTY-FOURTH DEFENSE
#### (Regulated Industry Exception)

68.     Plaintiffs' claims under the SCUTPA are barred by the regulated industry exception to the Act.

### FOR A TWENTY-FIFTH DEFENSE
#### (Statute Limiting Punitive Damages)

69.     Defendants plead the provisions of S.C. Code Ann. § 15-32-530 as a limit on Plaintiffs' recovery of punitive damages.

### FOR A TWENTY-SIXTH DEFENSE
#### (Unconstitutionality of Punitive Damages)

70.     Plaintiffs are not entitled to an award of punitive damages because such damages violate the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 3 of the South Carolina Constitution in that:

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

(a) The judiciary's ability to correct a punitive damage award at the appellate level only upon a finding of passion, prejudice, or caprice is inconsistent with due process guarantees;

(b) An award of punitive damages must strictly comply with the guidelines set forth in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), and the failure to do so renders any such award unconstitutional;

(c) Any award of punitive damages serving a compensatory function is inconsistent with due process guarantees;

(d) To the extent an award of punitive damages is excessive, such award violates due process guarantees;

(e) Even if it could be argued that a standard governing imposition of punitive damages exists, the standard is void for vagueness; and

(f) Plaintiffs' claim for punitive damages violates the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and Article I, Section 3 of the South Carolina Constitution in that the amount of punitive damages is based upon the wealth and status of Defendants.

### FOR A TWENTY-SEVENTH DEFENSE
**(Reservation)**

71.     Defendants hereby reserve the right to assert such other and further defenses to Plaintiffs' Complaint as further investigation and discovery may warrant. Defendants further reserve any and all counterclaims that may mature against Plaintiffs, specifically reserving any compulsory counterclaims they may have against them, including but not limited to claims for breach of the promissory note or other relief.

WHEREFORE, having fully replied to the Complaint of the Plaintiff, Defendants pray that the Complaint be dismissed, with prejudice, and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

[*signature page attached*]

11

NELSON MULLINS RILEY & SCARBOROUGH LLP


By: s/ Donna O. Tillis
     Matthew D. Patterson
     SC Bar No. 68316
     E-Mail: matt.patterson@nelsonmullins.com
     Carmen Harper Thomas
     SC Bar No. 76012
     E-Mail: carmen.thomas@nelsonmullins.com
     1320 Main Street / 17th Floor
     Donna O. Tillis
     SC Bar No. 101879
     E-Mail: donna.tillis@nelsonmullins.com
     Post Office Box 11070 (29211-1070)
     Columbia, SC  29201
     (803) 799-2000

*Attorneys for Defendants*

Columbia, South Carolina

January 6, 2017

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

STATE OF SOUTH CAROLINA    )
                              )    IN THE COURT OF COMMON PLEAS
COUNTY OF SPARTANBURG     )    SEVENTH JUDICIAL CIRCUIT

Kevin Cantrell and Anne Marie Cantrell,   )    Civil Action No.  2016-CP-42-03923
                                  )
                  Plaintiffs,   )
                                  )
        vs.                     )
                                  )    **DEFENDANTS' MOTION FOR**
New Penn Financial, LLC, Avenue 365   )    **DISMISSAL OF THE COMPLAINT**
Lender Services, Jake Brown, Shell   )
Point,                         )
                                  )
                Defendants.  )

Pursuant to Rule 12(b)(6) of the South Carolina Rules of Civil Procedure, Defendants New

Penn Financial LLC d/b/a Shellpoint Mortgage Servicing (improperly captioned respectively as

"New Penn Financial, LLC" and "Shell Point," and hereinafter, "New Penn"), Avenue 365 Lender

Services, LLC (improperly captioned as Avenue 365 Lender Services, and hereinafter "Avenue

365"), and Jake Brown (collectively, "Defendants") hereby move to dismiss all claims asserted in

the Complaint.  Defendants make this motion without waiving, but instead specifically preserving,

all other applicable defenses they have to these claims.  The grounds for this motion are as follows:

       1.     Pursuant to Rule 12(b)(6) of the South Carolina Rules of Civil Procedure, a motion

to dismiss must be granted when the pleadings fail to state facts sufficient to constitute a cause of

action as a matter of law.  *See* S.C. R. Civ. P. 12(b)(6) (requiring dismissal when the pleading fails

"to state facts sufficient to constitute a cause of action").  The mere recitation of legal elements is

insufficient to survive a motion to dismiss.  *See Charleston Cnty. Sch. Dist. v. Laidlaw Transit,*

*Inc.*, 348 S.C. 420, 426, 559 S.E.2d 362, 364-65 (Ct. App. 2001).  Plaintiffs' Complaint fails to

meet this standard as to all of the causes of action because the allegations are conclusory.  Plaintiffs

set forth grouped allegations without asserting facts specific to each separate Defendant's alleged

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

actions.  (*See* Compl. ¶¶ 23-26, 29-33, 35-37, 39-42.)  Plaintiffs' pleadings thus are deficient and improper as they fail to put Defendants on notice regarding the claims asserted against them.  Based on this overall deficiency, the Complaint should be dismissed.

2.     Similarly, Defendant Jake Brown should be dismissed as a party to this action because Plaintiffs failed to set forth *any* allegations in the Complaint sufficient to state a cause of action against him.  Indeed, Jake Brown is mentioned in only one paragraph of the Complaint, (*see id.* ¶ 8), and that paragraph is void of any alleged conduct of Jake Brown.  *See Vaughn v. Waste Indus. USA, Inc.*, No. 6:07-501, 2007 WL 1191020, at *4 (D.S.C. Apr. 18, 2007) (dismissing a defendant because "[t]he complaint [did] not allege any wrongdoing on the part of the [defendant]").  On this ground, Jake Brown should be dismissed from this action.

3.     Plaintiffs' claims against Defendants for fraud in the inducement, fraud, and constructive fraud fail because they are not pled in compliance with the South Carolina Rules of Civil Procedure.  Plaintiffs failed to allege all the elements of the respective fraud claims.  "It is well-settled that a complaint is fatally defective if it fails to allege all nine elements of fraud." *Inman v. Ken Hyatt Chrysler Plymouth, Inc.*, 294 S.C. 240, 242, 363 S.E.2d 691, 692 (1988); *see also Moseley v. All Things Possible, Inc.*, 388 S.C. 31, 36, 694 S.E.2d 43, 45 (Ct. App. 2010) (outlining the twelve elements of constructive fraud); *Pitt v. Jackson Nat'l Life Ins. Co.*, 352 S.C. 319, 335, 574 S.E.2d 502, 509 (Ct. App. 2002) (rejecting a plaintiff's argument that allegations of omissions were sufficient to establish the element of representation under a constructive fraud claim).

4.     Moreover, pursuant to Rule 9(b) of the South Carolina Rules of Civil Procedure, "the circumstances constituting        fraud . . . shall be stated with particularity."  Courts have interpreted "the circumstances," required to be pled particularly as being "the time, place, and

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Here, the allegations intended to support the elements Plaintiffs have pled are too generalized and are also insufficient to meet the Rule 9(b) standard. (*See*, *e.g.*, Compl. ¶ 26 (alleging that Defendants made material misrepresentations "concerning their services," without stating with particularity the time, place, speaker, and contents of the misrepresentation).)

5. Plaintiffs' negligence and fiduciary duty claims fail as a matter of law because Plaintiffs cannot establish that Defendants owe them a duty. *See Corbett v. City of Myrtle Beach, S.C.*, 336 S.C. 601, 609-10, 521 S.E.2d 276, 281 (Ct. App. 1999) (outlining the elements of negligence). "In order for liability to attach based on a negligence theory, the parties must have 'a relationship recognized by law as providing the foundation for a duty to prevent an injury.'" *Pulliam v. Clark*, Nos. 4:11-cv-03047, 4:11-CV-03047, 2012 WL 1835717, at *4 (D.S.C. May 21, 2012) (quoting *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 47, 644 S.E.2d 43, 46 (2007)). "Whether the law recognizes a particular duty is an issue of law to be determined by the court." *Jackson v. Swordfish Inv., L.L.C.*, 365 S.C. 608, 612, 620 S.E.2d 54, 56 (2005) (citation omitted).

(a) Plaintiffs alleged that New Penn refinanced Plaintiff Kevin Cantrell's mortgage loan in 2016, (Compl. ¶ 3), and owed a duty to its "clients and customers," (*id.* ¶ 35). Under South Carolina law, however, a lender does not have a duty arising merely from the creditor-debtor relationship. *See Pulliam*, 2012 WL 1835717, at *4 ("Additionally, South Carolina law does not recognize a duty arising merely from the fact of the creditor/debtor relationship."); *see also Midland Mortg. Corp. v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 780, 792 (D.S.C. 2013),

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

*aff'd sub nom. Midland Mortg. Co. v. Wells Fargo Bank NA*, 545 F. App'x 194 (4th Cir. 2013) (finding that a lender had no duty of care to its customers). Therefore, New Penn owed no duty to Plaintiff Kevin Cantrell under the law.

(b)    Plaintiffs' negligence claim against Shellpoint, Avenue 365, and Jake Brown arises solely from Plaintiff Kevin Cantrell's mortgage refinance loan. (*See* Compl. ¶¶ 35-36.) Just as a lender does not have a duty arising merely from the creditor-debtor relationship, third parties whose relationship arises through the lender also have no duty to borrowers. *See*, *e.g.*, *Land v. Green Tree Servicing, LLC*, No. 8:14-1165, 2014 WL 5527854, at *5 (D.S.C. Oct. 31, 2014) (dismissing a negligence claim against a mortgage servicer, a national property preservation management company, and property inspectors); *Weber v. Bank of Am. NA*, No. 13-cv-01999, 2013 U.S. Dist. LEXIS 128863, at *14-15 (D.S.C. Sept. 10, 2013) (finding that a mortgage servicer did not have a duty of care to a debtor); *Toney v. LaSalle Bank Nat'l Ass'n*, 896 F. Supp. 2d 455, 480 (D.S.C. 2012) (recommending dismissal of gross negligence claim where the debtor had not shown that mortgage servicer had any duty to support a negligence claim). Thus, Shellpoint, Avenue 365, and Jake Brown owed no duty to Plaintiffs.

(c)    Plaintiffs' claim for breach of fiduciary duty also should be dismissed for failure to state facts sufficient to establish a cause of action. To establish a claim for breach, a plaintiff must prove "(1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant." *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 335-36, 732 S.E.2d 166, 173 (2012). Plaintiffs have failed to allege any facts supporting a fiduciary duty, and therefore, their claim should be dismissed. (*See* Compl. ¶¶ 44-45.)

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

6.     Plaintiffs' claims under the South Carolina Unfair Trade Practices Act ("SCUTPA") fail and should be dismissed for several reasons.

(a)     First, Plaintiffs merely recite the elements of the claim, including purported damages, (*see id.* ¶ 32), which is insufficient to state a claim for relief.  *See Charleston Lumber Co. v. Miller Housing Corp.*, 318 S.C. 471, 482, 458 S.E.2d 431, 438 (Ct. App. 1995) (outlining the elements of a SCUTPA claim as (1) "violation of the Act," (2) "proximate cause," and (3) "damages").  In addition, "[t]o be actionable, under the UTPA, the unfair or deceptive act or practice *must* have an impact upon the public interest." *Crary v. Djebelli*, 329 S.C. 385, 387, 496 S.E.2d 21, 22-23 (1998) (emphasis added).  "Unfair or deceptive acts or practices have an impact upon the public interest if the acts or practices have the potential for repetition." *Id.*  Here, Plaintiffs have failed to state the alleged deceptive act complained of and furthermore, they fail to state how any such act would impact the public interest or is capable of repetition.

(b)     Even if the SCUTPA claim was sufficiently pled, the claim still fails because of the regulated industry exception of the Act.  *See* S.C. Code Ann. § 39-5-40(a) (excepting "[a]ctions or transactions permitted under laws administered by any regulatory body or officer acting under statutory authority of this State or the United States or actions or transactions permitted by any other South Carolina State law").  South Carolina trial courts have ruled that financial services institutions are unquestionably regulated entities given certain state and federal statutes such as the Consumer Protection Act.  *See*, *e.g.*, Order at 5-6, *CitiMortgage, Inc. v. Gadson*, No. 2012-CP-40-4942 (S.C. Ct. C.P. June 18, 2013) (attached hereto as Exhibit A) (holding that CitiMortgage, "as a loan servicer, operates within a highly regulated industry . . . and is therefore exempt from liability under the SCUTPA").  Similarly, mortgage loan originators,

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

such as Jake Brown, are regulated by the South Carolina Board of Financial Institutions. Accordingly, Plaintiffs' SCUTPA claim fails as a matter of law.

7.     Plaintiffs assert claims pursuant to the South Carolina Consumer Protection Code ("SCCPC"), by listing eleven statute citations—and nothing more—that Defendants allegedly violated.  The following claims under the SCCPC should be dismissed for Plaintiffs' failure to state a claim for which relief can be granted:

(a)     **S.C. Code Ann. § 37-2-101** *et seq.*  This chapter applies to "consumer credit sales," as defined under section 37-2-104.  Plaintiffs' claims under this chapter fail as a matter of law because Plaintiff Kevin Cantrell's transaction was a mortgage refinance, not a consumer credit sale.  Further, pursuant to the mortgage provisions, Plaintiffs intended to give New Penn a first lien mortgage.  (*See* Mortgage at 5, ¶ 4 ("Borrower shall promptly discharge any lien which has priority over this security instrument . . . .").)[1]  Thus, the mortgage refinance transaction is specifically excluded from the definition of consumer credit sale because Plaintiffs' debt is secured by a first lien mortgage given to New Penn.  Therefore, Plaintiffs' claims should be dismissed.

(b)     **S.C. Code Ann. §§ 37-2-309; 37-3-308.**  These provisions establish a claim for the failure to provide certain disclosures in connection with a purchase or refinance of a manufactured home.  Plaintiffs have not alleged, and cannot in good faith allege, that their

---

[1] Plaintiffs refer to the Mortgage, attached as Exhibit B, in the Complaint at Paragraph 3.  Further, the Mortgage is a matter of public record in the Spartanburg County, South Carolina, Register of Deeds.  Therefore, the Court can consider the Mortgage document for this motion to dismiss.  *See Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 195 n.5 (4th Cir. 2002) ("Because [the Plaintiffs] rel[y] on the agreement[s] in [their] complaint, it [i]s proper for the district court to consider [them] in ruling on the motion to dismiss."); *O'Neal v. Wal-Mart Stores East LP*, No. 4:11-cv-01239, 2012 U.S. Dist. LEXIS 83934, at *4 n.1 (D.S.C. Apr. 3, 2012) ("[A] court may consider matters of public record, items appearing in the record of the case, as well as exhibits attached to the complaint without converting a Rule 12(b)(6) motion to a motion for summary judgment.").

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

residence located at 323 Seabreeze Way, Lyman, South Carolina is a manufactured home. (*See* Compl. ¶ 1.) Therefore, any causes of action under these provisions should be dismissed. Further, this cause of action should be dismissed as to Avenue 365 and Jake Brown because they are not creditors for purposes of these provisions of the SCCPC. *See* S.C. Code Ann. § 37-1-301(13) (defining "creditor").

(c)     **S.C. Code Ann. § 37-3-302.**  Plaintiffs failed to allege any allegations related to a failure to provide receipts to a debtor for payments or a consumer loan, and therefore, this claim should be dismissed. Further, this cause of action should be dismissed as to Avenue 365 and Jake Brown because they are not creditors for purposes of this provision of the SCCPC. *See id.*

(d)     **S.C. Code Ann. § 37-5-201.**  Plaintiffs' cause of action under this provision should be dismissed because it is not a code section under the South Carolina Code.

(e)     **S.C. Code Ann. §§ 37-5-202; 37-5-203; 37-5-205.**  These provisions outline available remedies for potential violations. Therefore, to the extent Plaintiffs attempt to assert a claim under sections 5-202, 5-203, and 5-205, they should be dismissed because these provisions do not create independent causes of actions for which relief can be granted. *See In re Building Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liability Litig.*, No. 8:12-cv-00082, 2013 WL 1282223, at *10 (D.S.C. Mar. 27, 2013) (dismissing claims for declaratory judgment and injunctive relief on the basis that the "claims" were actually remedies and not independent causes of action). Furthermore, Plaintiffs have not alleged potential violations because they have not specified which statute was purportedly violated. *See Hampton Bensalem Assocs., L.P. v. O'Neill Bensalem Props., L.P.*, No. 04-2423, 2005 Bankr. LEXIS 3331, at *9 n.6 (Bankr. E.D. Pa. Nov. 22, 2005) (requiring plaintiff to file amended complaint within 20 days or

complaint would be dismissed with prejudice because "Plaintiff fail[ed] to cite the specific sections of the U.C.C. which it contend[ed] were violated by Defendants"). Therefore, Plaintiffs' claims should be dismissed because Defendants are not on any kind of notice as to the basis for the claims.

(f)    **S.C. Code Ann. §§ 37-7-116; 37-7-117; 37-7-118.** These provisions apply to "credit counseling organizations" and "credit counselors" engaging in "credit counseling service." *See* S.C. Code Ann. §§ 37-7-101(2)-(4) (defining each term). Not only are none of the Defendants credit counseling organizations or credit counselors, Plaintiffs have not even alleged that they are. (*See* Compl. ¶¶ 4, 8-10.) Therefore, a cause of action under this provision should be dismissed as to all Defendants. Moreover, certain entities, such as mortgage brokers and loan associations, are explicitly excluded from the definition of credit counseling organizations. *See* S.C. Code Ann. § 37-7-101(2)(b). For example, Jake Brown is a mortgage loan originator, (*see* Compl. ¶ 8), and therefore, any claims against him should be dismissed as a matter of law. *See* NMLS Consumer Access, "Jason David Brown," http://www.nmlsconsumeraccess.org/EntityDetails.aspx/INDIVIDUAL/247725 (last visited Jan. 3, 2017) (listing Jake Brown as a "mortgage loan originator").

(g)    **S.C. Code Ann. §§ 37-5-301; 37-5-302; 37-5-303.** Plaintiffs' claims fail because they do not allege any allegations sufficient to support relief under these provisions that relate to willful violations. Further, these provisions are criminal in nature and do not provide for a civil remedy and should therefore be dismissed.

(h)    **S.C. Code Ann. § 37-10-102**. Plaintiffs cannot state a claim for relief under this provision, the "attorney preference" statute, because the allegations of the Complaint show that New Penn complied with the statute. The attorney preference statute provides that for any

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

home mortgage loan, a "creditor must ascertain prior to closing the preference of the borrower as to the legal counsel that is employed to represent the debtor in all matters of the transaction relating to the closing of the transaction . . . ." S.C. Code Ann. § 37-10-102(a). A creditor can comply with the attorney preference statute by "including the preference information on or with the credit application . . . ." *Id.* § 37-10-102(a)(1). Here, Plaintiffs allege that New Penn indeed ascertained their preference by providing them with "a South Carolina Attorney and Insurance Preference Disclosure" prior to closing. (Compl. ¶ 5.) Based on this compliance with the statute, Plaintiffs attorney preference claim should be dismissed. Further, section 37-10-102 applies only to creditors. Therefore, this cause of action fails and should be dismissed as to Avenue 365 and Jake Brown because they are not creditors as defined under the statute. *See* S.C. Code Ann. § 37-1-301(12) (defining "creditor").

(i)    **S.C. Code Ann. § 37-10-105.** This provision outlines available remedies for potential violations. Therefore, to the extent Plaintiffs attempt to assert a claim under section 37-10-105, it should be dismissed because the provision does not create an independent cause of action for which relief can be granted. *See In re Building Materials*, 2013 WL 1282223, at *10. To the extent that Plaintiffs attempt to assert a claim for unconscionability under section 10-105(C), Plaintiffs' claim fails because they do not allege unconscionability under section 37-5-108. *See* S.C. Code Ann. § 37-10-105(C) (providing for a remedy if an "agreement or transaction is unconscionable pursuant to Section 37-5-108"). Furthermore, Plaintiffs' claim fails and should be dismissed as to Avenue 365 and Jake Brown because they are not creditors as defined under the statute. *See id.* § 37-1-301(12) (defining "creditor").

(j)    **S.C. Code Ann. 37-22-110 *et seq.*** Plaintiffs' claims fail for failure to allege any allegations sufficient to support relief under these provisions. In addition, the remedy for

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

violation of this chapter is criminal, and not civil in nature.  Therefore, Plaintiffs' claims should be dismissed.

8.    This motion may be supported by further briefing, argument of counsel, and other submissions to the Court.

### CONCLUSION

For the foregoing reasons, Defendants request the Court dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,


NELSON MULLINS RILEY & SCARBOROUGH LLP


By: s/ Donna O. Tillis
      Matthew D. Patterson
      SC Bar No. 68316
      E-Mail: matt.patterson@nelsonmullins.com
      Carmen Harper Thomas
      SC Bar No. 76012
      E-Mail: carmen.thomas@nelsonmullins.com
      1320 Main Street / 17th Floor
      Donna O. Tillis
      SC Bar No. 101879
      E-Mail: donna.tillis@nelsonmullins.com
      Post Office Box 11070 (29211-1070)
      Columbia, SC  29201
      (803) 799-2000

      *Attorneys for Defendants*

Columbia, South Carolina

January 6, 2017

# Exhibit A

## *(Order, CitiMortgage, Inc. v. Gadson, No. 2012-CP-40-4942 (S.C. Ct. C.P. June 18, 2013))*

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

FORM 4

STATE OF SOUTH CAROLINA
COUNTY OF RICHLAND
IN THE COURT OF COMMON PLEAS

JUDGMENT IN A CIVIL CASE

CitiMortgage Inc.

CASE NUMBER:    2012-CP-40-4942

Dennis R. Gadson, Jacqueline L. Gadson, Heritage Woods
Corp. and Heritage Property Owners Association, Inc.

_____

PLAINTIFF(S)                                    DEFENDANT(S)

| Submitted by: _____ | Attorney for : ☐ Plaintiff ☐ Defendant or ☐ Self-Represented Litigant |

## DISPOSITION TYPE (CHECK ONE)

☐ **JURY VERDICT.** This action came before the court for a trial by jury.  The issues have been tried and a verdict rendered.

☐ **DECISION BY THE COURT.**  This action came to trial or hearing before the court.  The issues have been tried or heard and a decision rendered.

☐ **ACTION DISMISSED** (*CHECK REASON*):  ☐ Rule 12(b), SCRCP;  ☐ Rule 41(a), SCRCP (Vol. Nonsuit);
      ☐      Rule    43(k),    SCRCP    (Settled);      ☐      Other      Dismissed    without
      prejudice

☐ **ACTION STRICKEN** (*CHECK REASON*):  ☐ Rule 40(j), SCRCP;  ☐ Bankruptcy;
      ☐ Binding arbitration, subject to right to restore to confirm, vacate or modify arbitration award; ☐ Other

☐ **DISPOSITION OF APPEAL TO THE CIRCUIT COURT** (*CHECK APPLICABLE BOX*):
      ☐ Affirmed;   ☐ Reversed;   ☐ Remanded;   ☐ Other

NOTE:    ATTORNEYS ARE RESPONSIBLE FOR NOTIFYING LOWER COURT, TRIBUNAL, OR ADMINISTRATIVE AGENCY OF THE CIRCUIT COURT
RULING IN THIS APPEAL.

**IT IS ORDERED AND ADJUDGED:**  ☒ See attached order (formal order to follow)  ☐ Statement of Judgment by the Court:

## ORDER INFORMATION

This order ☐ ends ☐ does not end the case.
Additional Information for the Clerk :

### INFORMATION FOR THE PUBLIC INDEX

Complete this section below when the judgment affects title to real or personal property or if any amount should be enrolled.  If there is no judgment information, indicate "N/A" in one of the boxes below.

| Judgment in Favor of (List name(s) below) | Judgment Against (List name(s) below) | Judgment Amount To be Enrolled |
|---|---|---|
|  |  | $ |
|  |  | $ |
|  |  | $ |

The judgment information above has been provided by the submitting party.  Disputes concerning the amounts contained in this form may be addressed by way of motion pursuant to the SC Rules of Civil Procedure.  Amounts to be computed such as interest or additional taxable costs not available at the time the form and final order are submitted to the judge may be provided to the clerk. **Note: Title abstractors and researchers should refer to the official court order for judgment details.**

Circuit Court Judge   *Re Hood*          Judge Code   2164     Date   June 17, 2013

## For Clerk of Court Office Use Only

This judgment was entered on the 25 day of _____, 20 ____ and a copy mailed first class or placed in the appropriate attorney's box on this 25 day of *June*, 20 13 to attorneys of record or to parties (when appearing pro se) as follows:

Sarah B. Nielsen                              Tameika Issac Devine
ATTORNEY(S) FOR THE PLAINTIFF(S)             ATTORNEY(S) FOR THE DEFENDANT(S)

Court Reporter _____              Clerk of Court   *Jeanette W McBride*

SCRCP Form 4C (10/2011)

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

STATE OF SOUTH CAROLINA     )
                                   )    IN THE COURT OF COMMON PLEAS
COUNTY OF RICHLAND         )    FIFTH JUDICIAL CIRCUIT

CitiMortgage, Inc.                  )    Civil Action No. 2012-CP-40-4942
                                     )
               Plaintiff,    )
                                     )
         vs.                  )    **ORDER**
                                     )
Dennis R. Gadson, Jacqueline L.     )
Gadson, Heritage Woods Corp. and   )
Heritage Property Owners Association, )
Inc.,                               )
               Defendants.    )

*(Clerk's stamp: RICHLAND COUNTY FILED 2013 JUN 25 PM 1:52 JEANETTE W. McBRIDE C.C.P. & G.S.)*

**BEFORE THE COURT** is the Motion to Dismiss Answer and Counterclaim filed by Plaintiff, CitiMortgage, Inc. ("Plaintiff") on October 18, 2012, pursuant to Rule 12(b)(6) of the South Carolina Rules of Civil Procedure. A hearing was held on March 20, 2013 at 3:30 PM, with Sarah B. Nielsen, Esquire present for Plaintiff Tameika Isaac Devine, Esquire present for Defendants Dennis R. Gadson and Jacqueline L. Gadson ("Defendants"). After hearing the arguments of the parties and after consideration of the written submissions, the Court finds as follows:

       1.      Plaintiff instituted the above-referenced action by filing a Summons and Complaint for foreclosure on July 19, 2012, seeking to foreclose on a Note in the original principal amount of One Hundred Thirty Nine Thousand One Hundred and 00/100 ($139,100.00) Dollars, which is secured by a Mortgage on certain real property known as ██████████████████. In response to the Complaint for foreclosure, Defendants filed an Answer and Counterclaim on August 13, 2012, asserting the following causes of action: (1) violation of S.C. Code Ann. § 37-10-

SCANNED

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

102, (2) breach of contract, (3) violation of the Real Estate Settlement Procedures Act ("RESPA"), (4) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), (5) unconscionable conduct, (6) intentional infliction of emotional distress, and (7) violation of the Fair Credit Reporting Act ("FCRA"). Plaintiff's Motion to Dismiss the seven counterclaims is the subject of this Order.

2.    A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim and should be granted if the claim does not set forth sufficient allegations entitling the party to relief. *Williams v. Condon*, 347 S.C. 227, 232–33, 553 S.E.2d 496, 499 (Ct. App. 2001). Although the court must accept the allegations of the claim, it is not permitted to read into the claim unalleged facts. *Overcash v. S.C. Elec. & Gas Co.*, 364 S.C. 569, 572, 614 S.E.2d 619, 620 (2005). Rather, the "motion must be granted if the facts and inferences reasonably deducible from them show that the [defendants] could not prevail on any theory of the case." *Gray v. State Farm Auto Ins. Co.*, 327 S.C. 646, 650–51, 492 S.E.2d 272, 274–75 (Ct. App. 1997).

3.    After considering the oral arguments and the written briefing, this Court **GRANTS** Plaintiff's Motion for the reasons outlined herein.

4.    Defendants' first counterclaim is for alleged violation of the attorney-preference statute in relation to a purported 2003 loan modification. (Ans. & Countercl. at ¶¶ 9–13.) This Court finds the claim legally deficient for three reasons. First, the claim is time-barred. The attorney-preference statute is subject to the three-year statute of limitations in Subsection (A) of the remedies statute, Section 37-10-105. *See* S.C. Code Ann. § 37-10-105(A) (outlining statute of limitations as "three years after the

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

violation occurred").[1]  Because Defendants' allegation relates to an alleged 2003 loan modification, any attorney-preference claim must have been asserted in 2006, thereby rendering the current claim time-barred.  On that basis alone, the claim is subject to dismissal.  Second, to the extent Defendants claim the 2003 loan modification was conducted without an attorney present, this Court finds that Defendants have failed to state facts sufficient to constitute a cause of action because the conduct complained of would constitute the unauthorized practice of law—not an attorney-preference violation. In South Carolina, there is no private right of action for the unauthorized practice of law. *See Linder v. Ins. Claims Consultants, Inc.*, 348 S.C. 477, 496, 560 S.E.2d 612, 622 (2002); *Franklin v. Chavis*, 371 S.C. 527, 535, 640 S.E.2d 873, 877 (2007).  Without a private right of action, Defendants cannot seek to recover for the unauthorized practice of law by asserting an attorney-preference claim.  Finally, the 2003 loan modification did not trigger the attorney-preference statute because a modification does not give rise to a closing as required by S.C. Code Ann. § 37-10-102.  The plain language of the attorney-preference statutes relates to the "closing of the transaction."  S.C. Code Ann. § 37-10-102(a).  Necessarily then, the attorney-preference notice requirement only arises where a closing occurs.  In South Carolina, precedent is clear that a closing occurs only where there is a conveyance or transfer of an interest in real property.  *See Doe v. McMaster*, 355 S.C. 306, 585 S.E.2d 773 (2003); *State v. Buyers Service Co.*, 292 S.C. 426, 357 S.E.2d 15 (1987).  A loan modification changes only the terms of the loan, *i.e.*, interest rate, loan term, or payment amount and does not impact the pre-existing mortgage

---

[1] Defendants fail to plead any unconscionable conduct as defined in and required by S.C. Code Ann. § 37-5-108, thereby rendering the statute of limitations in S.C. Code Ann. § 37-10-105(C) inapplicable to this cause of action.

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

securing the Note. On that additional basis, this Court holds that the attorney-preference statute is not triggered in relation to the alleged 2003 loan modification.

5.     Defendants' second claim for breach of contract relates to a purported 2009 trial modification plan. (Ans. & Countercl. at ¶¶ 14–19.) Because the claim relates only to a "trial" modification, as outlined in the pleading and conceded by Defendants during the hearing, this Court follows the consensus of opinion and finds that the allegations do not give rise to the existence of a contractual relationship as a matter of law. In South Carolina, "common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to all essential and material terms of the agreement." *Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 893 (Ct. App. 1989). The existence of a "trial" modification, without any allegation that the loan was permanently modified, fails to meet this standard. The term "trial" itself signifies there would be a subsequent and final agreement between the parties and, therefore, during the "trial" all essential and material terms of the agreement were not finalized. *See id.* Additionally, because the contractual relationship between the parties is necessarily the Note and Mortgage, Defendants failure to identify a provision of those documents allegedly breached by CitiMortgage is fatal to their claim. *See Pitts v. Jackson Nat'l Life Ins. Co.*, 352 S.C. 319, 328-29, 574 S.E.2d 502, 507-08 (Ct. App. 2002). Therefore, Defendants' breach of contract claim, as alleged, is legally deficient.

6.     Defendants' third claim is for alleged violation of the RESPA, specifically that CitiMortgage failed to respond to unspecified writings related to the servicing and administration of their loan. (Ans. & Countercl. at ¶¶ 20–25.)

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

CitiMortgage argued that these allegations were insufficient to allege submission of a qualified written request as defined by the RESPA, 12 U.S.C. § 2605(e)(1)(A), and that Defendants did not properly plead the actual damages requirement. During the hearing, Defendants conceded they did not allege specifics as to actual damages in their pleading stating only that such damages should be proven at trial. Without a specific allegation as to the actual damages sought in the pleading, as required by the cases interpreting this statutory scheme, this Court finds the RESPA claim fatally flawed and dismissal is proper. *See Ginn v. CitiMortgage, Inc. (In re Ginn)*, 465 B.R. 84, 95–96 (Bankr. D.S.C. 2012); *Nix v. Tavernier (In re Nix)*, No. 10-01103, 2012 Bankr. LEXIS 13, at *38–39 (Bankr. D.S.C. Jan. 5, 2012). Having ruled in favor of Plaintiff on the actual damages requirement, this Court does not reach the qualified written request argument.[2]

7.    Defendants' fourth claim for violation of the SCUTPA is both time-barred and subject to a statutory exemption and, therefore, must be dismissed. While the claim itself is devoid of factual allegations, it necessarily incorporates the alleged 2003 loan modification and, on that basis, is time-barred in the same respect as the attorney-preference claim. *See* S.C. Code Ann. § 39-5-150; *Epstein v. Brown*, 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005) (The "statute of limitations begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for wrongful conduct"). Here, Defendants would

---

[2] This Court also notes that Plaintiff relied on two compelling documents in its memorandum in support of motion to dismiss related to a purported qualified written request and response. While this Court may consider these documents at the Rule 12(b)(6) stage pursuant to the South Carolina Supreme Court's holding in *Brazell v. Windsor*, 384 S.C. 512, 515, 682 S.E.2d 824, 826 (2009), it does not reach this argument due to Defendants' failure to satisfy the actual damages requirement outlined in the statute. However, a cursory review of the documents evidences that if the May 1, 2012 letter is that relied upon by Defendants in asserting the RESPA claim, the May 12, 2012 response by Plaintiff appears to meet the requirements of 12 U.S.C. § 2605(e)(2)(C). During the hearing on this argument Defendants admitted that if the response is valid, they would not have a claim for damages against Plaintiff.

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

have been on notice of the existence of an attorney when signing the loan modification agreement—or lack thereof—in 2003. Reasonable minds cannot differ on this fact and, therefore, the claim is barred by the three-year statute of limitations. Additionally, this Court finds that Plaintiff, as a loan servicer, operates within a highly regulated industry, given the existence of the Home Affordable Modification Program, Dodd-Frank Wall Street Reform and Consumer Protection Act, and other state and federal statutes, and, is therefore exempt from liability under the SCUTPA. *See* S.C. Code Ann. § 39-5-40(a).

  8. Defendants' fifth claim seeks recovery for alleged unconscionable debt collection. (Ans. & Countercl. at ¶¶ 31–36.); S.C. Code Ann. § 37-5-108. Plaintiff argued, and this Court agrees, that a necessary perquisite to bringing a claim for unconscionable debt collection in civil court is the filing of a complaint with the South Carolina Department of Consumer Affairs and allowing the administrative process to attempt resolution prior to court involvement. *See* S.C. Code Ann. § 37-5-108(6). Here, the Answer and Counterclaim fails to include any allegation related to the administrative remedies requirement. (*See generally* Ans. & Countercl.) Moreover, during the hearing, Defendants failed to state or allege that they had complied with the administrative remedies requirement and simply stated they had no argument in response. Therefore, this Court finds that by failing to plead compliance with Section 37-5-108(6), Defendants fail to plead an essential prerequisite to bringing the claim and Plaintiff is entitled to dismissal as a matter of law.

  9. Defendants' sixth counterclaim is for intentional infliction of emotional distress. (Ans. & Countercl. at ¶¶ 37–39.) The entire claim encompasses three paragraphs alleging only that the undefined conduct was "willful and intentional and

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

intended to inflict emotional distress" on Defendants. (*Id.*) For purposes of pleading the claim, this is patently insufficient. In South Carolina, an intentional infliction of emotional distress claim has a high pleading standard and requires allegations of "conduct was so extreme and outrageous as to exceed all possible bounds of decency" and distress "so severe that no reasonable person could be expected to endure it." *Bergstrom v. Palmetto Health Alliance*, 358 S.C. 388, 401, 596 S.E. 2d 42, 48 (2004). Defendants' pleading, as outlined above, simply does not meet this standard and must be dismissed. *Dye v. Gainey*, 320 S.C. 65, 69, 463 S.E.2d 97, 99 (Ct. App. 1995) ("Even viewing the allegations of the complaint in the light most favorable to [the non-moving party], as we are required to do in this instance, we agree with the trial judge that she fails to state a cause of action for intentional infliction of emotional distress.").

10.    Finally, Defendants' claim for violation of the FCRA relates to the Plaintiff's alleged failure to accurately report the status of their account with the credit bureaus. (Ans. & Countercl. at ¶¶ 40–44.) Plaintiff argues that while furnishers of information do have a duty to accurately report pursuant to 15 U.S.C. § 1681s-2(a), this duty does not give rise to a cause of action for Defendants. This Court agrees. The statute specifically provides that there is no private right of action for borrowers for violation of the duty to accurately report because violation of such duty is enforced "exclusively" by government officials. 15 U.S.C. § 1681s-2(d); *Freeman v. Equifax, Inc.*, No. 6:12-845, 2012 U.S. Dist. LEXIS 89477, at *6 (D.S.C. Jun. 28, 2012) (It is well-established that "no private right of action exists for a violation of [Section 1681s-2(a)] of the FCRA, and that these duties instead can be enforced only by government officials."). Moreover, Defendants acknowledged during the hearing that a private cause

7

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

of action may not exist for their claim and, instead, they sought only the opportunity to present related testimony at the final foreclosure hearing.  This Court finds that such response evidences there is no claim for damages for the conduct complained of and, instead, such action is more appropriately addressed by an affirmative defense.  Because Defendants allege only Plaintiff breached the duty to accurately report, this claim is subject to dismissal, with prejudice.

NOW, THEREFORE, for the reasons outlined herein, the Court hereby GRANTS Plaintiff's Motion to Dismiss and Defendants' counterclaims are dismissed, with prejudice.  This ruling relates only to those claims for affirmative relief by Defendants against Plaintiff and does not impact Defendants' ability to argue any properly pled affirmative defenses outlined in the Answer and Counterclaim by way of subsequent dispositive motion or at the final foreclosure hearing.

IT IS SO ORDERED, this __18TH__ day of ____JUNE____ 2013.

_Re Hood_
_____
The Honorable Robert E. Hood
Fifth Judicial Circuit

# Exhibit B
## *(Mortgage)*

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

Record & Return To:
Avenue 365 Lender Services
401 Plymouth Road
Suite 550
Plymouth Meeting, PA 19462

Prepared By:
ADREANNA HOWELL
NEW PENN FINANCIAL, LLC
4000 CHEMICAL ROAD
PLYMOUTH MEETING, PA 19462
(484) 594-1248

MTG-2016-26308 

**MTG BK 6130 PG 62-81**

Recorded 20 Pages on 06/23/2016 09:04:35 AM
Recording Fee: $26.00
Office of REGISTER OF DEEDS, SPARTANBURG, S.C.
Dorothy Earle, Register Of Deeds

[Space Above This Line For Recording Data]

## MORTGAGE

CANTRELL
Loan # ███████
MIN: 10075443160207939
MERS Phone 1-888-679-6377
PIN 5-11-00-228.00
Case #: 19-19-6-0479953

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated APRIL 28, 2016, together with all Riders to this document.

**(B) "Borrower"** is KEVIN CANTRELL AND ANNAMARIE CANTRELL, BOTH A ONE-HALF UNDIVIDED INTEREST. Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is NEW PENN FINANCIAL, LLC. Lender is a LIMITED LIABILITY CORPORATION organized and existing under the laws of DE. Lender's address is 4000 CHEMICAL ROAD, SUITE 200, PLYMOUTH MEETING, PA 19462.

**(E) "Note"** means the promissory note signed by Borrower and dated APRIL 28, 2016. The Note states

NEW PENN FINANCIAL, LLC (NMLS # 3013) | NMLS # 247725
SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349.34                                          Page 1 of 16

Modified for VA
Form 3041 1/01





ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

that Borrower owes Lender **ONE HUNDRED THIRTY THOUSAND ONE HUNDRED FIFTY-EIGHT AND 00/100** Dollars (U.S. **$130,158.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JUNE 1, 2046**.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider  ☐ Other(s) [specify] _____
☒ VA Rider

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or

NEW PENN FINANCIAL, LLC (NMLS #: 3013) | NMLS #: 247725
SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349.34                                Page 2 of 16                        **Modified for VA**
                                                                         **Form 3041 1/01**

pwe / AJR

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

not that party has assumed Borrower's obligations under the Note and or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the COUNTY of **SPARTANBURG**:
SEE ATTACHED LEGAL DESCRIPTION
which currently has the address of 323  SEA  BREEZE  WAY, LYMAN, South Carolina 29365 ("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at

NEW PENN FINANCIAL, LLC (NMLS # 3013) | NMLS # 247725
SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349 34                                           Page 3 of 16                        Modified for VA
                                                                                      Form 3041 1/01

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow

NEW PENN FINANCIAL, LLC (NMLS #: 3013) | NMLS #: 247725

SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349.34                      Page 4 of 16                      Modified for VA
Form 3041 1/01

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

Item. Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on

NEW PENN FINANCIAL, LLC (NMLS # 3013) | NMLS # 247725

SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349 34                                                                Page 5 of 16                                              Modified for VA
                                                                                                                                 Form 3041 1/01

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the

NEW PENN FINANCIAL, LLC (NMLS #: 3013) | NMLS # 247725
SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349.34                                   Page 6 of 16                              Modified for VA
                                                                                  Form 3041 1/01

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate

NEW PENN FINANCIAL, LLC (NMLS # 3013) | NMLS # 247725

SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349.34                                        Page 7 of 16                                  Modified for VA
                                                                                            Form 3041 1/01

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in

NEW PENN FINANCIAL, LLC (NMLS #: 3013) | NMLS # 247725

SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349 34                                    Page 8 of 16                                    Modified for VA
                                                                                          Form 3041 1/01

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums

NEW PENN FINANCIAL, LLC (NMLS # 3013) | NMLS # 247725

SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349 34                                   Page 9 of 16                        Modified for VA
                                                                             Form 3041 1/01

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the

NEW PENN FINANCIAL, LLC (NMLS #: 3013); NMLS # 247725
SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349 34                                      Page 10 of 16                            Modified for VA
                                                                                    Form 3041 1/01

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall

NEW PENN FINANCIAL, LLC (NMLS # 3013) NMLS # 247725
SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349 34                                   Page 11 of 16                    Modified for VA
Form 3041 1/01

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the

NEW PENN FINANCIAL, LLC (NMLS #: 3013) | NMLS #: 247725
SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349.34                                    Page 12 of 16                              Modified for VA
                                                                                    Form 3041 1/01

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence, all of which shall be additional sums secured by this Security Instrument.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

NEW PENN FINANCIAL, LLC (NMLS #: 3013) | NMLS # 247725

SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349.34                            Page 13 of 16                            Modified for VA
Form 3041 1/01

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

**24. Homestead Waiver.** Borrower waives all rights of homestead exemption in the Property to the extent allowed by Applicable Law.

**25. Waiver of Appraisal Rights.** The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may within 30 days after the sale of the mortgaged property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. TO THE EXTENT PERMITTED BY LAW, THE UNDERSIGNED HEREBY WAIVES AND RELINQUISHES THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT REGARDLESS OF ANY APPRAISED VALUE OF THE MORTGAGED PROPERTY. This waiver shall not apply so long as the Property is used as a dwelling place as defined in § 12-37-250 of the South Carolina Code of Laws.

**26. Future Advances.** The lien of this Security Instrument shall secure the existing indebtedness under the Note and any future advances made under this Security Instrument up to 150% of the original principal amount of the Note plus interest thereon, attorneys' fees and court costs.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____  4.28.16
- BORROWER - KEVIN CANTRELL - DATE -

_____  4/28/16
ANNAMARIE CANTRELL - DATE -

Signed, sealed and delivered in the presence of:

_____          _____
Witness                                                          Witness

NEW PENN FINANCIAL, LLC (NMLS # 3013) | NMLS # 247725
SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349 34                          Page 14 of 16                          Modified for VA
                                                                        Form 3041 1/01

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

[Space Below This Line For Acknowledgment]

STATE OF _South Carolina_

COUNTY OF _Spartanburg_

The foregoing instrument was acknowledged before me this _28th_ day of _April 2016_ by

_Kevin Cantrell + Annamarie Cantrell_

_Robert J. Breckenridge_
Notary Public for _South Carolina_

My Commission Expires: _Aug. 21 2022_

_Anne J. Cantrell_

STATE OF _South Carolina_

COUNTY OF _Spartanburg_

I certify that _Anne J. Cantrell_ personally appeared before me this day and certified to me under oath or by affirmation that he or she is not a grantee or beneficiary of the transaction, signed the foregoing document as a subscribing witness, and witnessed

_Kevin Cantrell_

sign the foregoing document.

_Robert J. Breckenridge_
Notary Public for _South Carolina_

My Commission Expires: _Aug. 21 2022_

ROBERT RYAN BRECKENRIDGE
NOTARY PUBLIC
My Commission Expires
08/21/2022
SOUTH CAROLINA

NEW PENN FINANCIAL, LLC (NMLS #: 3013) | NMLS #: 247725
SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349.34                     Page 15 of 16                     Modified for VA
Form 3041 1/01



ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

STATE OF _South Carolina_
COUNTY OF _Spartanburg_

I certify that _Anne J. Cantrell_ personally appeared before me this day and certified to me under oath or by affirmation that he or she is not a grantee or beneficiary of the transaction, signed the foregoing document as a subscribing witness, and witnessed _Annamarie Cantrell_

sign the foregoing document.

Notary Public for _South Carolina_

My Commission Expires: _Aug. 21/2022_

MORTGAGE LOAN ORIGINATOR JAKE BROWN
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER 247725
MORTGAGE LOAN ORIGINATION COMPANY NEW PENN FINANCIAL, LLC
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER 3013

NEW PENN FINANCIAL, LLC (NMLS # 3013); NMLS # 247725
SOUTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
349 34                                     Page 16 of 16

Modified for VA
Form 3041 1/01

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

## V.A. GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

CANTRELL
Loan #: ▮▮▮▮▮▮
MIN: 100754434160207939
Case #: 19-19-6-0479953

THIS V.A. GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this **28TH** day of **APRIL, 2016**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to **NEW PENN FINANCIAL, LLC** (herein "Lender") and covering the property described in the Security Instrument and located at **323 SEA BREEZE WAY, LYMAN, SC 29365** (Property Address).

**V.A. GUARANTEED LOAN COVENANT:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code,

NEW PENN FINANCIAL, LLC (NMLS #: 3013) | NMLS #: 247725
VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER
≪ 53.18                                   Page 1 of 3



ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

**LATE CHARGE:** At Lender's option. Borrower will pay a "late charge" not exceeding **FOUR** percent (**4.000%**) of the overdue payment when paid more than **FIFTEEN (15)** days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

**GUARANTY:** Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

**TRANSFER OF THE PROPERTY:** This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.
An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

    (a) ASSUMPTION FUNDING FEE: A fee equal to one half of one percent (0.50%) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

    (b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption and transfer of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

NEW PENN FINANCIAL, LLC (NMLS #: 3013) | NMLS # 247725
VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER
≈ 53 18             Page 2 of 3

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

(c) <u>ASSUMPTION INDEMNITY LIABILITY</u>: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Borrower(s) has executed this V.A. Guaranteed Loan and Assumption Policy Rider.

_28 Apr 2016_
- BORROWER - KEVIN CANTRELL - DATE -

_4/28/16_
ANNAMARIE CANTRELL - DATE -

ELECTRONICALLY FILED - 2017 Jan 06 4:25 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

Escrow File No.: **1672563**

## EXHIBIT "A" – LEGAL DESCRIPTION

**THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF SPARTANBURG, STATE OF SOUTH CAROLINA, AND IS DESCRIBED AS FOLLOWS:**

**ALL THAT CERTAIN PIECE, PARCEL OR LOT OF LAND, SITUATE, LYING AND BEING IN THE STATE OF SOUTH CAROLINA, COUNTY OF SPARTANBURG, BEING SHOWN AND DESIGNATED AS LOT NO. 53, AS SHOWN ON A SURVEY OF STILLPOINTE, PHASE II, DATED MAY 7, 2004 AND RECORDED IN PLAT BOOK 157, PAGE 602, OFFICE OF THE REGISTER OF DEEDS FOR SPARTANBURG COUNTY, S.C. FOR A MORE COMPLETE AND PARTICULAR DESCRIPTION, REFERENCE IS HEREBY MADE TO THE ABOVE REFERRED TO PLATS AND RECORDS THEREOF.**

**BEING THE SAME PREMISES CONVEYED UNTO TAMEKA ROMAN, BY VIRTUE OF DEED FROM SUNCREST HOMES, LLC, A SOUTH CAROLINA CORPORATION DATED NOVEMBER 18, 2005, RECORDED NOVEMBER 23, 2005 IN BOOK 84, PAGE 054, SPARTANBURG COUNTY, SC.**

**BEING THE SAME PREMISES CONVEYED UNTO KEVIN CANTRELL, BY VIRTUE OF DEED FROM TAMEKA ROMAN IRVIN F/K/A TAMEKA ROMAN DATED APRIL 17, 2014, RECORDED APRIL 18, 2014 IN BOOK 105-V, PAGE 810, SPARTANBURG COUNTY, SC.**

**BEING THE SAME PREMISES CONVEYED UNTO ANNAMARIE CANTRELL A ONE-HALF UNDIVIDED INTEREST BY VIRTUE OF DEED FROM KEVIN CANTRELL DATED SEPTEMBER 18, 2014, RECORDED SEPTEMBER 18, 2014 IN BOOK 107-B, PAGE 429, SPARTANBURG COUNTY, SC.**

**PARCEL ID: 5-11-00-228.00**

ELECTRONICALLY FILED - 2017 Feb 09 3:51 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

| STATE OF SOUTH CAROLNA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF SPARTANBURG | ) | |
| Kevin Cantrell and AnnaMarie Cantrell, | ) | |
| Plaintiffs, | ) | |
| v. | ) | **MOTION TO AMEND COMPLAINT** |
| New Penn Financial, LLC, Avenue 365 Lender Services, Jake Brown, Shell Point | ) | |
| Defendants. | ) | |

Plaintiffs hereby move the Court, by and through their undersigned counsel, for an Order of this Court allowing them to amend their Complaint pursuant to Rule 15 (a), SCRCP.  Based on information, Plaintiffs wish to amend their Complaint to remedy allegations in Defendants' Motion to Dismiss, add new causes of action indicated by Defendants' Motion to Dismiss, and correct the spelling of Plaintiff AnnaMarie Cantrell.

This motion will also be supported by South Carolina law, the pleadings, documents, and affidavits to be submitted.

THE WARD LAW FIRM, PA

*s/Jason M. Imhoff*
Jason M. Imhoff (SC Bar #69355)
PO Box 5663
Spartanburg, SC 29304
(864) 582-3075
jimhoff@wardfirm.com
*Attorneys for Plaintiffs*

February 9, 2017

ELECTRONICALLY FILED - 2017 Apr 04 2:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

| | | |
|---|---|---|
| STATE OF SOUTH CAROLNA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | SEVENTH JUDICIAL CIRCUIT |
| COUNTY OF SPARTANBURG | ) | |
| | ) | |
| Kevin Cantrell and AnnaMarie Cantrell, | ) | Civil Action No. 2016-CP-42-03923 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **CONSENT ORDER TO** |
| | ) | **AMEND COMPLAINT** |
| New Penn Financial, LLC, Avenue 365 | ) | |
| Lender Services, Jake Brown, Shell Point | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On February 9, 2017, Plaintiffs Kevin Cantrell and AnnaMarie Cantrell filed a Motion to Amend the Complaint. The parties, by and through their undersigned counsel of record, have agreed to resolve the motion by consent in the form as agreed and have so notified the Court pursuant to Rule 15(a), SCRCP. In addition to the amended allegations, Plaintiffs wish to amend their Complaint to correct the spelling of Plaintiff AnnaMarie Cantrell. Defendants specifically reserve the right to assert, without limitation, all defenses, motions, or other legal remedies to refute the allegations in the Amended Complaint and defend against Plaintiffs' claims.

**NOW THEREFORE,** it is ordered that Plaintiffs Kevin Cantrell and AnnaMarie Cantrell may file and serve their Amended Complaint.

**AND IT IS SO ORDERED.**

_____
The Honorable J. Derham Cole
Seventh Judicial Circuit

Spartanburg, South Carolina

March _____, 2017

ELECTRONICALLY FILED - 2017 Apr 04 2:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

**WE SO CONSENT:**

THE WARD LAW FIRM, PA


*s/Jason M. Imhoff*
Jason M. Imhoff, Esquire
PO Box 5663
Spartanburg, SC 29304
jimhoff@wardfirm.com

*Attorney for Plaintiffs*


NELSON MULLINS RILEY & SCARBOROUGH, LLC


*s/Matthew D. Patterson*
Matthew D. Patterson, Esquire
SC Bar No. 68316
E-Mail: matt.patterson@nelsonmullins.com
Carmen Harper Thomas
SC Bar No. 76012
E-Mail: carmen.thomas@nelsonmullins.com
Donna O. Tillis
SC Bar No. 101879
E-Mail: donna.tillis@nelsonmullins.com
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC  29201
(803) 799-2000

*Attorneys for Defendants*

ELECTRONICALLY FILED - 2017 Apr 04 2:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923



Spartanburg Common Pleas

**Case Caption:**    Kevin  Cantrell  , plaintiff, et al VS   New Penn Financial, Llc  , defendant, et al

**Case Number:**    2016CP4203923

**Type:**    Order/Amend

IT IS SO ORDERED !

s/ J. Derham Cole

Electronically signed on 2017-04-04 12:01:45    page 3 of 3

ELECTRONICALLY FILED - 2017 Apr 10 12:07 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

| | | |
|---|---|---|
| STATE OF SOUTH CAROLNA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF SPARTANBURG | ) | |
| | ) | |
| Kevin Cantrell and AnnaMarie Cantrell, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **AMENDED SUMMONS** |
| | ) | |
| New Penn Financial, LLC, Avenue 365 | ) | |
| Lender Services, Jake Brown, Shell Point | ) | |
| | ) | |
| Defendants. | ) | |

**TO THE ABOVE DEFENDANTS**

 **YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the Complaint on the undersigned at this office located at 233 South Pine Street, Post Office Box 5663, Spartanburg, South Carolina 29304, within thirty (30) days after the service hereof, exclusive of the day of such service, and if you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint.

 Dated at Spartanburg, South Carolina this April 10th, 2017

     The Ward Law Firm, PA
     Attorneys for Plaintiff

     *s/Jason M. Imhoff*
     Jason M. Imhoff (SC Bar No: 69355)
     The Ward Law Firm, PA
     PO Box 5663
     Spartanburg, SC 29304
     Telephone (864) 582-3075
     Facsimile (864) 585-3090

ELECTRONICALLY FILED - 2017 Apr 10 2:07 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

| | | |
|---|---|---|
| STATE OF SOUTH CAROLNA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF SPARTANBURG | ) | |
| | ) | |
| Kevin Cantrell and AnnaMarie Cantrell, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **AMENDED COMPLAINT** |
| New Penn Financial, LLC, Avenue 365 | ) | |
| Lender Services, Jake Brown, Shell | ) | |
| Point | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiffs, Kevin Cantrell and AnnaMarie Cantrell, complaining of the Defendants, New Penn Financial, LLC, Avenue 365 Lender Services, Jake Brown, and Shell Point (hereinafter "Defendants"), will show unto the court and allege as follows:

1.  Kevin Cantrell and AnnaMarie Cantrell are the owners of a home located at 323 Seabreeze Way, Lyman, South Carolina.

2.  Kevin Cantrell is a veteran and qualified for a VA loan for the residence located at 323 Seabreeze Way, Lyman, South Carolina

3.  In late 2015 or early 2016, Mr. Cantrell received a solicitation from Defendants to refinance his Veteran's Administration Home Mortgage at a lower rate. No explanation was provided to the Cantrells whether New Penn was a mortgage bank, mortgage broker, mortgage originator, or mortgage company.

4.  Mr. and Mrs. Cantrell contacted New Penn Financial and chose to refinance the home at a lower interest rate with cash out to pay off debt. New Penn Financial, LLC identifies its address as 4000 Chemical Road, Suite 200, Plymouth Meeting, PA, 19462.

5.  The Cantrells were provided with numerous documents and packages from New Penn Financial outlining the terms of the loan. They were also asked to execute and return numerous documents including, but not limited to, authorizations to release social security numbers, a credit inquiry explanation letter, a borrower's certificate and authorization, and a

2

ELECTRONICALLY FILED - 2017 Apr 10 2:07 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

South Carolina Attorney and Insurance Preference Disclosure, which they returned to New Penn Financial or its mortgage broker or representatives with Avenue 365, Jake Brown, or Shell Point.

6.    When filling out the South Carolina Attorney and Insurance Preference Disclosure the Cantrells chose attorney Whit Bishop as their closing attorney.

7.    The Cantrells' closing was delayed and some of the terms of that closing were also changed at the last minute.

8.    During the process of obtaining the loan for the property the Cantrells were directed to and worked with Jake Brown, Mortgage Consultant, MNLS# 247725 who had an email account of jdbrown@newpennfinancial.com.  It was and is unclear whether Jake Brown worked for New Penn, Shell Point, and/or Avenue 365.

9.    Additionally, during the process of obtaining the loan, the Cantrells began receiving correspondence and documents from Avenue 365 Lender Services. No person explained or identified Avenue 365 Lender Service's role in the new loan process or its relationship with New Penn, Jake Brown, or Shell Point.

10.    After the closing, the Cantrells were directed to make the mortgage payments to Shell Point which they have continued to do.

11.    New Penn Financial described itself as "a direct mortgage lender" which is able to provide some of the "fastest service in the mortgage industry without sacrificing our dedication to customer service."

12.    On the date of the closing, the Cantrells were visited by attorney Ryan Breckenridge, who was sent by and on behalf of Defendants, who offered no identification or explanation that he was acting as the Cantrells' attorney, on behalf of Defendants, or that he was an attorney at all. In fact, during the closing he introduced himself only as a notary and did not explain that he was the closing attorney in the case.

13.    Within all of the documents, including authorizations to disclose financial and personal information nowhere is the relationship between New Penn, Avenue 365, Shell Point, Jake Brown, or Ryan Breckenridge identified, explained, disclosed, or described.

ELECTRONICALLY FILED - 2017 Apr 10 2:07 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

14.     During the closing process the Cantrells assumed that the closing documents had been sent to the Law Office of Whit Bishop and that he had reviewed and signed off on those documents. In fact, no closing package or documents were ever sent to Whit Bishop despite the choice of Whit Bishop in Plaintiffs' Attorney Preference disclosure and neither the Cantrells nor Attorney Whit Bishop were aware of that fact until Mr. Cantrell contacted Mr. Bishop subsequently on an unrelated matter.

15.     Nowhere within the voluminous documents sent to the Cantrells were the Cantrells made aware that they did not have an option to obtain their own lawyer or that a separate company other than New Penn Financial would be accessing and reviewing their financial records and companies other than New Penn Financial would be preparing the closing package and acting as the closing attorney in contravention of the Cantrells' wishes.

16.     In contravention of the Cantrells' written choice of Whit Bishop as their closing attorney for the loan, New Penn, Shell Point, and Avenue 365 sent the final settlement package to South Carolina Attorney Robert Ryan Breckenridge, without notice to the Cantrells.

17.     Robert Ryan Breckenridge was approved and assigned by New Penn Financial, LLC and Avenue 365 and, upon information and belief, Shell Point.

18.     In a published opinion, filed April 20, 2016 Attorney Breckenridge received a public reprimand by the Supreme Court of South Carolina with details of similar improper relationship between a lender, Title Company, and the closing company.  Attorney Breckenridge was previously suspended from the practice of law for his role in improperly handling real estate closings

4

ELECTRONICALLY FILED - 2017 Apr 10 2:07 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

19.     Mr. Breckenridge did not disclose to the Cantrells that he was splitting attorney's fees with anyone else, offer the Cantrells a dual representation disclosure form or make any other disclosure, and instead told the Cantrells that he was simply a notary.  He did not disclose that he was being investigated by the Attorney Disciplinary Commission for the same closing practice.

20.     As a result of a similar type of transaction Mr. Breckenridge received a public reprimand for, among other things, "failure to explain the scope of his representation to [Clients] and shared a fee with a non-lawyer." Further, the Supreme Court found that Mr. Breckenridge did not comply with Rule 407 SCACR which requires "a lawyer who supervises [a residential real estate closing] process must, at a minimum, explain [the disbursement] process of the clients and ensure they understand the lawyer's limited role in the transaction does not include receipt and disbursement of funds." The Court found that "in essence, Respondent was using a rubber stamp for a non-lawyer, out of state organization with no offices in the State of South Carolina whose involvement was not disclosed to the Respondent's clients. This Court has insisted on lawyer-directed real estate closings in order to protect the public. Respondent's method of handling his client's business provided no real protection of his clients and no attorney record of the transactions by which to verify the details of the closing.

21.     As the closing occurred in Spartanburg County, South Carolina, jurisdiction and venue are appropriate in Spartanburg, South Carolina.

22.     Upon information and belief, the Plaintiffs are informed and believe that New Penn Financial, Avenue 365, and Shell Point are alter egos of each other who totally dominated and controlled New Penn and Avenue 365 or visa versa and Defendants manifested no separate interest personally or between the corporate entities and the entities functioned solely to achieve the goals of Shell Point.

ELECTRONICALLY FILED - 2017 Apr 10 2:07 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

23.    Because Shell Point was the alter ego of New Penn Financial and Avenue 365 to separate the corporate entities and apply the corporate rules would promote wrongdoing and injustice and would contravene the public policy of South Carolina and thus they should be considered as one single entity for the purposes of this Complaint.

<u>**FOR A FIRST CAUSE OF ACTION**</u>
**(Fraud in the Inducement, Fraud, Constructive Fraud)**

24.    Each and every allegation in the preceding paragraphs not inconsistent herewith are realleged and adopted for the purpose of this causes of action.

25.    Upon information and belief, Defendants are not separate arm's length entities with an appropriate system of checks and balances in the residential lending forum, but rather are the same or related companies working collectively to obtain customers and profits while intending to give the appearance that each company is separate and working for the borrower.

26.    Each company, individually and collectively, works to minimize costs and increase profits to the detriment of the borrower by relying on illegal, unethical, or fraudulent procedures, associations, commissions, and fees, including, but not limited to directing borrowers to sister companies, ignoring or failing to offer the choice of outside counsel or brokers, sharing commissions, fees, and profits, and working in direct contravention of South Carolina law, codes, and ethical standards to increase profits.

27.    Upon information and belief, the Defendants knew or should have known that directing borrowers to sister companies without disclosing the true financial relationships between those companies sharing fees, ignoring borrower's choice of attorney, utilizing unethical and illegal out of state closing companies, and using counsel with a public reprimand for the same or similar conduct was illegal, unethical, fraudulent, and dishonest.

28.    Defendants intentionally and willfully made material misrepresentations of fact to Plaintiffs or purposefully concealed information concerning their services and intentionally and willfully withheld material information from Plaintiffs regarding their role in the process, their

ELECTRONICALLY FILED - 2017 Apr 10 2:07 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

financial ties and benefits, their intentions to avoid the eyes and oversight of outside counsel, and failed to disclose that the manner in which they advertised, marketed, obtained, processed, and shared business was intended solely to increase profits at the expense of the Plaintiffs.

29.     Plaintiffs had a right to rely upon Defendants'' representations and omissions in connection with the note, contract, mortgage, and the agreement and have been damaged by Defendants' fraudulent conduct

## FOR A SECOND CAUSE OF ACTION
### (Unfair Trade Practices)

30.     Each and every allegation in the preceding paragraphs not inconsistent herewith are realleged and adopted for the purpose of this cause of action.

31.     The actions of Defendants described above constitute deceptive acts and/or practices in the conduct of trade and/or commerce which have an adverse impact on the public interest.

32.     Plaintiffs' deceptive acts and practices are capable of repetition in that they actively engage in property loans, closings, and mortgages in the State of South Carolina in the same manner and method detailed above.

33.     Defendants' unfair and deceptive acts constitute violation of South Carolina Unfair Trade Practices Act at S.C. Code § 39-5-10, *et. seq.*

34.     As a direct and proximate cause of Defendants' deceptive acts and practices, Plaintiffs have suffered actual and consequential damages.

35.     Defendants' deceptive acts and practices constitute willful and knowing violations of S.C. Code § 39-5-10, *et. seq.* Plaintiffs are therefore entitled to three times actual damages, plus interest, costs, and attorneys' fees, for which they hereby sue.

## FOR A THIRD CAUSE OF ACTION
### (Negligence)

36.     Each and every allegation in the preceding paragraphs not inconsistent herewith are realleged and adopted for the purpose of this cause of action.

ELECTRONICALLY FILED - 2017 Apr 10 2:07 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

37.     Defendants owed a duty to provide clients and customers with correct information to comply with their contracts, obligations, requirements, statutes, and regulations and owed a duty to act in good faith, perform due diligence, provide honest and accurate information, and investigate the status of its subcontractors and information provided by said subcontractors during and before closings.

38.     Defendants breached its duty to these Plaintiffs in that it provided incorrect information or failed to provide any information, failed to investigate, failed to research, and failed to oversee the companies and attorneys closing loans on its behalf and failed to provide proper notices, failed to analyze its duties pursuant to contract, code, statues, regulation, or otherwise, and failed to perform due diligence or otherwise acted unreasonably.

39.     Said breaches of its duties have damaged Plaintiffs and proximately caused damage to Plaintiffs for which they should be compensated.

### FOR A FOURTH CAUSE OF ACTION
### (Violation of South Carolina Consumer Protection Code)

40.     Each and every allegation in the preceding paragraph not inconsistent herewith are realleged and adopted for the purpose of this cause of action.

41.     Plaintiffs are consumers under the South Carolina Consumer Protection Code and is entitled to the rights and liberties contained therein.

42.     Defendants have breached the South Carolina Consumer Protection Code in the following particulars, including, but not limited to:

        a)     § 37-10-102
        b)     § 37-10-105
        c)     § 37-22-110, et seq
        d)     § 37-5-108

42.    Due to Plaintiffs' unconscionable, willful and continued wrongful acts, and violation of the S.C. Consumer Protection Code Defendants has been and continues to be damaged.

### FOR A FOURTH CAUSE OF ACTION
**(Breach of Fiduciary Duty)**

43.    Each and every allegation in the preceding paragraphs not inconsistent herewith are realleged and adopted for the purpose of this cause of action.

44.    Defendants owed a fiduciary duty to Plaintiffs such that they were bound in equity and good conscience were bound to act in good faith and with due regard to act in the interest of the Plaintiffs.

45.    Defendants breached their fiduciary duty to the Cantrells as stated herein and proximately caused damage to the Cantrells.

### FOR A FIFTH CAUSE OF ACTION
**(Violation of the Real Estate Settlement Procedures Act)**

46.    Each and every allegation in the preceding paragraphs not inconsistent herewith are realleged and adopted for the purpose of this cause of action.

47.    Upon information and belief, the business dealings, relationships, and agreements of Defendants as indicated in the proceeding paragraphs violate the Real Estate Settlement Procedures Act, specifically, but not limited to, 12 U.S.C. Section 2607 such that all defendants' conduct violates the provisions of that section prohibiting kickbacks and unearned fees.

48.    If those allegations are correct, Plaintiff is entitled to all statutory and common law damages as well as treble damages, punitive damages, and fees and costs.

### FOR A SIXTH CAUSE OF ACTION
**(Violation of the "Mortgage Broker Fee Agreement")**

ELECTRONICALLY FILED - 2017 Apr 10 2:07 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

ELECTRONICALLY FILED - 2017 Apr 10 2:07 PM - SPARTANBURG - COMMON PLEAS - CASE#2016CP4203923

49.    Each and every allegation in the preceding paragraph not inconsistent herewith are realleged and adopted for the purpose of this cause of action.

50.    Upon information and belief, the business dealings, relationships, and agreements of Defendants as indicated in the proceeding paragraphs violate the "Mortgage Broker Fee Agreements,", specifically, but not limited to, S.C Code Ann §40-58-70, §40-58-78 such that all defendants' conduct violates the provisions of that section prohibiting kickbacks and unearned fees.

51.    If those allegations are correct, Plaintiff is entitled to all statutory and common law damages as well as treble damages, punitive damages, and fees and costs.

WHEREFORE, Plaintiffs pray for the following relief:

(a)    that Plaintiffs be granted judgment against Defendants in a sum to be determined by jury for actual and punitive damages, treble damages, statutory damages, attorneys' fees, for the cost of this action, interest and for such other and further relief as this Court may be just and proper;

(b)    for such other and further relief as this court may deem to be just and equitable.

THE WARD LAW FIRM, PA

*s/Jason M. Imhoff*
Jason M. Imhoff (SC Bar #69355)
PO Box 5663
Spartanburg, SC 29304
(864) 582-3075
jimhoff@wardfirm.com
*Attorneys for Plaintiffs*

April 10, 2017