IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Kevin Cantrell and AnnaMarie Cantrell, | C/A No. 7:17-cv-01078-DCC |
| Plaintiffs, | |
| v. | |
| New Penn Financial, LLC, Avenue 365 Lender Services, Jake Brown, Shell Point, | **OPINION AND ORDER** |
| Defendants. | |

This matter comes before the Court on Defendants' Partial Motion for Judgment on the Pleadings. ECF No. 23. Plaintiffs filed a Response in Opposition, ECF No. 30, and Defendants' filed a Reply, ECF No. 31. Accordingly, the Motion is ripe for review.

## **BACKGROUND**

Plaintiffs filed their initial Complaint in the Court of Common Pleas for Spartanburg County, South Carolina on October 31, 2016, asserting five state law causes of action. ECF No. 1-1 at 3–11. Defendants filed an Answer and Motion to Dismiss on January 6, 2017. *Id.* at 12–64. On February 9, 2017, Plaintiffs filed a Motion to Amend Complaint, and the state court entered a Consent Order to Amend Complaint on April 4, 2017. *Id.* at 65–68. Thereafter, on April 10, 2017, Plaintiffs filed an Amended Complaint, which asserted two new causes of action—violation of the "Mortgage Broker Fee Agreement" and violation of the Real Estate Settlement Procedures Act ("RESPA").[1] *Id.* at 69–78.

---

[1] 12 U.S.C. § 2601 *et seq.*

1

Defendants removed this action on April 25, 2017, based on federal question jurisdiction in light of the newly added RESPA claim and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  ECF No. 1.  That same day, Defendants filed an Answer and a Motion to Dismiss.  ECF Nos. 4, 5.  Plaintiffs filed a Response in Opposition on May 9, 2017, and Defendants filed a Reply on May 16, 2017.  ECF Nos. 10, 13.

On June 20, 2017, the Court issued an Order granting in part, denying in part, and denying without prejudice to refile in part.  ECF No. 20.  Specifically, the Court: (1) denied Defendants' Motion as to Plaintiffs' claim under the South Carolina Unfair Trade Practices Act ("SCUTPA"); (2) granted Defendants' Motion as to Plaintiffs' claims for violations of Sections 37-10-105 and 37-22-110 of the South Carolina Consumer Protection Code ("CPC"); and (3) denied the remainder of Defendants' Motion, giving Plaintiffs leave to file a Second Amended Complaint to cure "various pleading deficiencies."  *Id.* at 5–9.

On June 27, 2017, Plaintiffs filed a Second Amended Complaint, which is the operative Complaint in the Motion currently before the Court.  ECF No. 21.  Plaintiffs' Second Amended Complaint alleges that Defendant New Penn Financial ("New Penn") solicited Plaintiff Kevin Cantrell to refinance his Veteran's Administration Home Mortgage at a lower rate.  ECF No. 21 at 2.  In February of 2016, Plaintiffs contacted Defendant New Penn and chose to refinance their home.  *Id.*  Defendant New Penn provided Plaintiffs with numerous documents outlining the terms of the loan.  *Id.* at 3.  Defendant New Penn also required Plaintiffs to execute a variety of documents including a South Carolina Attorney and Insurance Preference Disclosure.  *Id.*  Plaintiffs chose attorney Whit Bishop as their closing attorney.  *Id.*

Defendant New Penn also provided Plaintiffs with documents that indicated that an affiliated company, Defendant Avenue 365 Lender Services ("Avenue 365"), could be used as the closing company, although Defendant Avenue 365's exact role was not explained. *Id.* Plaintiffs' closing was delayed and some of the terms were changed by Defendants. *Id.* During the process of obtaining the loan, Plaintiffs worked with Defendant Jake Brown, a mortgage consultant affiliated with the other Defendants. *Id.* Defendant Jake Brown "repeatedly assured [Plaintiffs] that everything was taken care of, the [Plaintiffs] would be protected, and the loan and its terms were good for them." *Id.* However, Defendant Jake Brown "never told [Plaintiffs] that they had their choice of their own closing company or Title Company or explained what that meant." *Id.* No one working for Defendants asked Plaintiffs about their choice of attorney or Title Company even though Plaintiffs had chosen attorney Whit Bishop. *Id.* at 4.

During the process of obtaining the loan, Plaintiffs began receiving correspondence and documents from Defendant Avenue 365. *Id.* On the date of the closing, Plaintiffs were visited at their home by attorney Ryan Breckenridge, who was sent by and on behalf of Defendants, to handle the closing. *Id.* at 4. Mr. Breckenridge did not identify himself as an attorney, instead introducing himself as a notary. *Id.* Plaintiffs later learned that Defendant Avenue 365 hired Mr. Breckenridge[2] through a third party attorney placement firm. *Id.* at 5. Therefore, Plaintiffs assumed the closing documents had been sent to attorney Whit Bishop. *Id.* Plaintiffs later learned that the documents were never

---

[2] Mr. Breckenridge has been publicly reprimanded by the Supreme Court of South Carolina for similar behavior.

sent to attorney Whit Bishop, and Defendants required Plaintiffs, who were unrepresented, to sign a new mortgage loan application, a new good faith estimate, a non-durable power of attorney, a hold harmless provision, a privacy policy, a legal description of the property, a borrower compliance agreement, and an agreement to reimburse Defendant Avenue 365 for any and all attorneys' fees and costs. *Id.* After the closing, Plaintiffs were directed to make their mortgage payments to Defendant Shell Point,[3] which they have continued to do. *Id.* at 4.

As a result of this conduct, Plaintiffs' Second Amended Complaint asserts the following causes of action: (1) fraud in the inducement, fraud, and constructive fraud; (2) violation of the SCUTPA; (3) negligence; (4) violation of the South Carolina CPC; (5) breach of fiduciary duty; (6) violation of RESPA; and (7) violation of the "Licensing of Mortgage Broker Act."[4] On July 11, 2017, Defendants filed an Answer. ECF No. 22. On August 2, 2017, Defendants filed a Partial Motion for Judgment on the Pleadings, which is the Motion currently before the Court. ECF No. 23. Plaintiffs filed a Response in Opposition on September 7, 2017, and Defendants filed a Reply on September 14, 2017. ECF Nos. 30, 31. Accordingly, the Motion is ripe for review.

## **LEGAL STANDARD**

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[A]

---

[3] Defendants contend that Defendant Shell Point is a subdivision of Defendant New Penn. At this procedural posture, the Court accepts Plaintiffs' Second Amended Complaint as true. If Defendant Shell Point is not an appropriate party, Defendants may file an appropriate motion.

[4] S.C. Code Ann. § 40-58-10 *et seq.*

motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." *Deutsche Bank Nat'l Trust Co. v. IRS*, 361 F. App'x. 527, 529 (4th Cir. 2010) (citing *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009)); *see also Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).  The key difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is that on a 12(c) motion, the court "consider[s] the answer as well as the complaint" and "documents incorporated by reference in the pleadings*." Fitchett v. Cty. of Horry, S.C.*, C/A No. 4:10-cv-1648-TLW-TER, 2011 WL 4435756, at *3 (D.S.C. Aug. 10, 2011) (citations omitted).

To that end, Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted).  In a Rule 12(b)(6) motion, the court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  However, while the Court must accept the facts in a light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

Therefore, to survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

### I. Fraud, Constructive Fraud, and Fraud in the Inducement

Defendants seek judgment on the pleadings as to Plaintiffs' claims for Fraud, Constructive Fraud, and Fraud in the Inducement. To prevail on a cause of action for fraud, Plaintiffs "must prove by clear, cogent, and convincing evidence the following elements: '(1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.'" *Moseley v. All Things Possible, Inc.*, 694 S.E.2d 43, 45 (S.C. Ct. App. 2010) (quoting *Regions Bank v. Schmauch*, 582 S.E.2d 432, 444–45 (S.C. Ct. App. 2003)). "To establish constructive fraud[,] all elements of actual fraud except the element of intent must be established." *O'Quinn v. Beach Assocs.*, 249 S.E.2d 734, 738 (S.C. 1978). However, to establish a claim for fraud in the inducement, Plaintiffs "must prove the nine elements of fraud as well as the following three elements: '(1) that the alleged fraudfeasor made a false representation relating to a present or preexisting fact; (2) that the alleged

6

fraudfeasor intended to deceive [them]; and (3) that [they] had a right to rely on the representation made to [them].'" *Moseley*, 694 S.E.2d at 45 (quoting *Darby v. Waterboggan of Myrtle Beach, Inc.*, 344 S.E.2d 153, 155 (S.C. Ct. App. 1986)). Additionally, because Plaintiffs are asserting fraud claims in federal court, their Second Amended Complaint must "state with particularity the circumstances constituting fraud"; however "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Defendants contend Plaintiffs have failed to plead representations, materiality, ignorance, reliance, and proximate injury with the particularity that Federal Rule of Civil Procedure 9 requires. Defendants further allege Plaintiffs have failed to allege the circumstances constituting fraud with particularity and have failed to properly allege any cause of action for fraud against Defendant Jake Brown. Plaintiffs respond that the Second Amended Complaint sets forth, in detail, the fraudulent conduct that Defendants engaged in to induce Plaintiffs to refinance their home loan.

After reviewing the pleadings and arguments of the parties, the Court finds that Plaintiffs have sufficiently pled causes of action for fraud, constructive fraud, and fraud in the inducement. Plaintiffs' Second Amended Complaint alleges a coordinated scheme whereby Defendants induced Plaintiffs to refinance their home loan based on a series of promises and representations that Plaintiffs allege are false. Taking Plaintiffs' allegations as true, as the Court must at this stage of the proceedings, the Second Amended Complaint satisfies all of the elements of fraud, constructive fraud, and fraud in the inducement. *See* ECF No. 21 at 8–10. Defendants arguments to the contrary ignore the factual allegations pled throughout the Second Amended Complaint. As Plaintiffs

7

correctly note, the Second Amended Complaint "spells out allegations that the Defendants are working in contravention of South Carolina law to attract borrowers while using a legally questionable business model, partnerships, and closing process which deceives [their] customers and, in this specific case, prevented the customer from utilizing their own personal attorney." ECF No. 30 at 9. Whether these allegations are true is a matter to be decided by the factfinder after the parties have had an opportunity to conduct discovery.

Federal Rule of Civil Procedure 9 "imposes a heightened pleading requirement for allegations of fraud in order to give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage strike suits, and to prevent the filing of suits that simply hope to uncover relevant information during discovery." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996) (internal quotations omitted) (citation omitted). As the Fourth Circuit has noted, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). That standard is met in this case, and Defendants' Motion is denied as to Plaintiffs' claims for fraud, constructive fraud, and fraud in the inducement.

II. **Licensing of Mortgage Brokers Act**

Defendants seek judgment on the pleadings as to Plaintiffs' claim for violation of the Licensing of Mortgage Brokers Act ("Mortgage Brokers Act"). Defendants contend that Plaintiffs' claims fail as a matter of law because that Act does not apply to mortgage

lenders or originators, like Defendants New Penn or Jake Brown, or to title service companies like Defendant Avenue 365. Plaintiffs respond that Defendants' arguments are factual in nature and ask the Court to deny Defendants' Motion in this regard.

Plaintiffs' Second Amended Complaint alleges that Defendants' violation of their duties of care, honesty, loyalty, and disclosure violates the Mortgage Brokers Act, specifically, but not limited to Sections 40-58-70 and 40-58-78 of the South Carolina Code. The Mortgage Broker Act in Title 40, Chapter 58 of the South Carolina Code, applies to mortgage loan brokers. *See* S.C. Code Ann. § 40-58-30. The Mortgage Brokers Act states:

> "Act as a mortgage broker" means to act, for compensation or gain, or in the expectation of compensation or gain, either directly or indirectly, by: (i) soliciting, processing, placing, or negotiating a mortgage loan for a borrower from a mortgage lender or depository institution or offering to process, place, or negotiate a mortgage loan for a borrower from a mortgage lender or depository institution, (ii) engaging in tablefunding of a mortgage loan, or (iii) acting as a loan correspondent whether those acts are done by telephone, by electronic means, by mail, or in person with the borrowers or potential borrowers. "Act as a mortgage broker" also includes bringing a borrower and lender together to obtain a mortgage loan or rendering a settlement service as described in 12 U.S.C. 2602(3) and 24 C.F.R. Part 3500.2(b).

S.C. Code Ann. § 40-58-20(1).

The Court has reviewed Plaintiffs' Second Amended Complaint, and finds that Plaintiffs characterization of each of the Defendants leads to a conclusion that they are not mortgage brokers as contemplated by the Mortgage Brokers Act. Plaintiffs tacitly acknowledge this in their Response in Opposition by stating, "Defendants themselves admit the business model is such that all of the companies working to loan borrower's (sic) money are either owned by the same company or sister companies." ECF No. 30 at 18. Indeed, Plaintiffs' allegations characterize Defendants as mortgage lenders rather

than mortgage brokers. *See* S.C. Code Ann. § 37-22-110(2) ("'Act as a mortgage lender' means to engage in the business of making or servicing a mortgage loan for compensation or gain, or in the expectation of compensation or gain, either directly or indirectly, including soliciting, processing, placing, or negotiating a mortgage loan."). Therefore, Plaintiffs causes of action under the Mortgage Brokers Act fail as a matter of law because none of the Defendants are mortgage brokers.[5] Accordingly, Defendants' Motion is granted as to Plaintiffs' claims under the Mortgage Brokers Act.

### III. South Carolina Unfair Trade Practices Act

Defendants seek judgment on the pleadings as to Plaintiffs' claim for violation of the SCUTPA. The SCUTPA "declares 'unfair or deceptive acts or practices in the conduct of any trade or commerce . . . unlawful.'" *Maybank v. BB&T Corp.*, 787 S.E.2d 498, 512 (S.C. 2016) (quoting S.C. Code Ann. § 39-5-20(a)). "'To recover in an action under [SCUTPA], the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s).'" *Id.* (quoting *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 732 S.E.2d 166, 174 (2012)).

Defendants contend that Plaintiffs have not alleged an unfair or deceptive act or any damages. The Court finds that Plaintiffs' factual allegations are sufficient to plausibly allege an unfair or deceptive act. For example, Plaintiffs allege improper supervision, the unauthorized practice of law, and Defendants' failure to disclose their business

---

[5] While Section 40-58-70 arguably applies more broadly to any "person in the course of a mortgage loan transaction," that subsection lists prohibited activities that may lead to administrative penalties; it does not create a private cause of action.

relationships.  However, Plaintiffs' allegations as to damages are insufficient even at the pleading stage.  Plaintiffs merely allege they have suffered "an unfair loan and Title Insurance policy, execution of documents in which they give up, assign, or pledge legal rights and remedies, and loss of the right to representation, oversight, and supervision of their loan."  ECF No. 21 at 11–12.  These allegations do not plausibly allege a "monetary or property loss" as is required by SCUTPA.  Accordingly, the Court grants Defendants' Motion as to Plaintiffs' SCUTPA claim and affords Plaintiffs ten (10) days to amend their pleadings to plausibly plead a claim for damages.

## IV. Negligence

Defendants seek judgment on the pleadings as to Plaintiffs' claim for negligence. "To prevail on a negligence claim, a plaintiff must establish duty, breach, causation, and damages."  *Lord v. D & J Enters., Inc.*, 757 S.E.2d 695, 702 (S.C. 2014).  Here, Defendants contend only that they owed no duty to Plaintiffs.  The existence of a legal duty is a question of law for the court to determine.  *Cole v. Boy Scouts of Am.*, 725 S.E.2d 476, 478 (S.C. 2011).  "An affirmative legal duty to act exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance." *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 586 S.E.2d 586, 588 (S.C. 2003).

In their Second Amended Complaint, Plaintiffs allege that "Defendants owed a duty to provide clients and customers with correct information to comply with their contracts, obligations, requirements, statutes, and regulations and owed a duty to act in good faith, perform due diligence, provide honest and accurate information, and investigate the status of [their] subcontractors and information provided by said subcontractors during

11

and before closings." ECF No. 21 at 12. Defendants point out, however, that South Carolina law does not recognize a duty between a creditor and a debtor, between a mortgage servicer and debtor, or between "third parties whose relationship arises through the lender" and a debtor. ECF No. 23 at 17–18.

In response, Plaintiffs contend that Defendants voluntarily assumed a duty by virtue of their actions and that Defendants owed Plaintiffs a duty arising from the attorney choice statute.[6] In reply, Defendants deny voluntarily assuming a duty and allege that Plaintiffs' claim for negligence per se is being raised for the first time and is improper because it would permit a double recovery. *See* ECF No. 31 at 6 ("The attorney preference statute, however, already provides a private cause of action allowing for a consumer to recover actual damages and statutory fees from a creditor who violates the statute." (citing S.C. Code Ann. § 37-10-105(A))).

As an initial matter, the Court finds that Plaintiffs' Second Amended Complaint contemplates a negligence per se action by alleging a duty pursuant to statute. ECF No. 21 at 12. The Court further notes that Defendants' position on whether S.C. Code Ann. § 37-10-105(A) applies appears to have changed in this litigation. When Plaintiffs asserted a cause of action pursuant to that statute in their Amended Complaint, Defendants moved to dismiss, claiming "Plaintiffs attempt to assert a claim under section 37-10-105 fails and should be dismissed as to all Defendants *because the provision does not create an independent cause of action for which relief can be granted*." ECF No. 4 at

---

[6] *See* S.C. Code Ann. § 37-10-102(a) ("The creditor must ascertain prior to closing the preference of the borrower as to the legal counsel that is employed to represent the debtor in all matters of the transaction relating to the closing of the transaction . . . and comply with such preference.").

12

14 (emphasis added).  Now, Defendants claim that a negligence per se action should fail because that statute does create a cause of action.  ECF 31 at 6.

Notwithstanding Defendants' change in position, the Court needs not reach the negligence per se issue, as the Court finds that Defendants chose closing counsel for Plaintiffs and therefore assumed a duty to use due care in that selection and operation. "At common law, when there is no duty to act but an act is voluntarily undertaken, the actor assumes a duty to use due care." *Sherer v. James*, 351 S.E.2d 148, 150 (S.C. 1986) (citation omitted).  Accordingly, Defendants' Motion is granted in part and denied in part, and Plaintiffs' negligence claim may proceed as to whether Defendants were negligent in their assumption of the duty to properly choose and supervise closing counsel.

### V.  South Carolina Consumer Protection Code

Defendants seek judgment on the pleadings as to Plaintiffs' claim for violation of the South Carolina CPC.  Plaintiffs' Second Amended Complaint alleges that Defendants violated Sections 37-10-102 ("Section 102") and 37-5-108 ("Section 108") of the South Carolina Code.  Section 37-10-102 sets forth a requirement that a creditor must comply with a debtor's attorney preference during the closing of a transaction.  Section 37-5-108 provides consumers with a private cause of action as to a creditor's unconscionable conduct.

Turning first to Section 102, Defendants ask the Court for judgment on the pleadings as to Defendant Jake Brown and Defendant Avenue 365, contending that neither is a "creditor" as defined in the CPC.  Plaintiffs respond that each of the Defendants are alter egos and, therefore, those Defendants could be considered

"creditors" at the pleading stage. The CPC defines a "creditor" as "the person who grants credit in a credit transaction or, except as otherwise provided, an assignee of a creditor's right to payment." S.C. Code Ann. § 37-1-301(13). Plaintiffs' Second Amended Complaint describes Defendant Jake Brown as a mortgage consultant and Defendant Avenue 365 as a title insurance and settlement services provider. ECF No. 21 at 3–4. Neither of these descriptions would qualify as a creditor under the CPC. However, Plaintiffs specifically pled that Defendants "New Penn Financial, Avenue 365, and Shell Point are alter egos of each other." ECF No. 21 at 7. Accordingly, Plaintiffs have stated a plausible claim for violation of Section 102 as to all Defendants except Defendant Jake Brown. Therefore, Defendant's Motion is granted on this claim as to Defendant Jake Brown and denied as to the remaining Defendants.

As to Plaintiffs' claim under Section 108, Defendants contend Plaintiffs failed to allege unconscionability. The Court disagrees. Plaintiffs have pled sufficient factual allegations to state a plausible claim for violation of Section 108. Defendants' arguments are better suited for a motion for summary judgment after the parties have had the opportunity to conduct discovery. Therefore, Defendants' Motion is denied as to Plaintiffs' Section 108 claims.

## VI. Breach of Fiduciary Duty

Defendants seek judgment on the pleadings as to Plaintiffs' claim for breach of fiduciary duty. To establish a claim for breach of fiduciary duty, Plaintiffs must prove: (1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant." *RFT Mgmt. Co., L.L.C. v. Tinsley & Adams L.L.P.*, 732 S.E.2d 166, 173 (S.C.

2012) (citations omitted).  "A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience is bound to act in good faith and with due regard to the interests of the one imposing the confidence." *Davis v. Greenwood Sch. Dist. 50*, 620 S.E.2d 65, 68 (S.C. 2005) (citation omitted).  "The determination of whether a fiduciary relationship exists is an equitable issue to be determined by the court." *Cowburn v. Leventis*, 619 S.E.2d 437 (S.C. Ct. App. 2005) (citation omitted).

Defendants contend that there is no statutory fiduciary duty applicable to any of the Defendants because the Mortgage Brokers Act is inapplicable.  ECF No. 23 at 19–20.  Furthermore, Defendants contend that Defendant New Penn cannot have a fiduciary duty with Plaintiffs as South Carolina has not recognized a fiduciary duty between a lender and a borrower, absent certain circumstances.  *Id.* at 20.  The Court disagrees.

Plaintiffs' Second Amended Complaint contains detailed factual allegations that Defendants, working in concert, invited a fiduciary obligation through their business model and promises to guide and counsel borrowers through the loan process.  Plaintiffs sufficiently allege that Defendants did not disclose their relationships with each other and concealed material facts while Plaintiffs were going through the loan refinancing process.  As Plaintiffs note in their Response in Opposition, "the Defendants, collectively, stood in the shoes of at least four separate and distinct entities, one being [Plaintiffs'] attorney, and asked or invited [Plaintiffs] to put their trust entirely with one collection of related entities with no outside or independent audit or oversight."  ECF No. 30 at 11. Furthermore, Defendants' argument about lender-borrower relationships is inapplicable

15

in this case. See *Regions Bank v. Schmauch*, 582 S.E.2d 432, 444 (S.C. Ct. App. 2003) ("However, a bank may be held to a fiduciary duty if it undertakes to advise a depositor as part of services the bank offers. Such a relationship charges the bank with a duty to disclose material facts that may affect its customer's interests." (internal citation omitted)). Accordingly, Defendant's Motion is denied as to this claim.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Motion, ECF No. 23, is **GRANTED IN PART** and **DENIED IN PART** as set forth above. Specifically, Defendants' Motion is **DENIED** as to Plaintiffs' claims for fraud, constructive fraud, and fraud in the inducement; **GRANTED** as to Plaintiffs' claims under the Mortgage Brokers Act; **GRANTED** as to Plaintiffs' SCUTPA claims, with leave for Plaintiffs to amend their allegation of damages within ten days; **GRANTED IN PART** and **DENIED IN PART** as to Plaintiffs' negligence claims as set forth above; **GRANTED IN PART** and **DENIED IN PART** as to Plaintiffs' CPC claims as set forth above; and **DENIED** as to Plaintiffs' breach of fiduciary duty claim.[7]

IT IS SO ORDERED.

s/Donald C. Coggins, Jr.
United States District Judge

September 17, 2018
Spartanburg, South Carolina

---

[7] At the end of their Motion, Defendants request the Court dismiss all claims against Defendant Jake Brown. ECF No. 23 at 26–27. Unless otherwise noted in the Order, that request is denied.