IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Kevin Cantrell and AnnaMarie Cantrell, | C/A No. 7:17-cv-01078-DCC |
| Plaintiffs, | |
| v. | |
| New Penn Financial, LLC, Avenue 365 Lender Services, Jake Brown, Shell Point, | **OPINION AND ORDER** |
| Defendants. | |

This matter comes before the Court on Defendants' Motion for Summary Judgment. ECF No. 55. Plaintiffs filed a Response in Opposition, ECF No. 62, and Defendants' filed a Reply, ECF No. 65. The Court heard arguments on the Motion on July 22, 2019.[1] Accordingly, the Motion is ripe for review.

## **BACKGROUND**

Plaintiffs filed their initial Complaint in the Court of Common Pleas for Spartanburg County, South Carolina on October 31, 2016, asserting five state law causes of action. ECF No. 1-1 at 3–11. Defendants filed an Answer and Motion to Dismiss on January 6, 2017. *Id.* at 12–64. On February 9, 2017, Plaintiffs filed a Motion to Amend Complaint, and the state court entered a Consent Order to Amend Complaint on April 4, 2017. *Id.* at 65–68. Thereafter, on April 10, 2017, Plaintiffs filed an Amended Complaint, which

---

[1] The Court also heard argument on Plaintiffs' Motion for Partial Summary Judgment, ECF No. 54, and denied the Motion in a ruling from the bench. *See* ECF No. 76.

1

asserted two new causes of action—violation of the "Mortgage Broker Fee Agreement" and violation of the Real Estate Settlement Procedures Act ("RESPA").[2] *Id.* at 69–78.

Defendants removed this action on April 25, 2017, based on federal question jurisdiction in light of the newly added RESPA claim and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). ECF No. 1. That same day, Defendants filed an Answer and a Motion to Dismiss. ECF Nos. 4, 5. Plaintiffs filed a Response in Opposition on May 9, 2017, and Defendants filed a Reply on May 16, 2017. ECF Nos. 10, 13.

On June 20, 2017, the Court issued an Order granting in part, denying in part, and denying without prejudice to refile in part. ECF No. 20. Specifically, the Court: (1) denied Defendants' Motion as to Plaintiffs' claim under the South Carolina Unfair Trade Practices Act ("SCUTPA"); (2) granted Defendants' Motion as to Plaintiffs' claims for violations of Sections 37-10-105 and 37-22-110 of the South Carolina Consumer Protection Code ("CPC"); and (3) denied the remainder of Defendants' Motion, giving Plaintiffs leave to file a Second Amended Complaint to cure "various pleading deficiencies." *Id.* at 5–9.

On June 27, 2017, Plaintiffs filed a Second Amended Complaint. ECF No. 21. Plaintiffs' Second Amended Complaint alleged that Defendant New Penn Financial ("New Penn") solicited Plaintiff Kevin Cantrell to refinance his Veteran's Administration Home Mortgage at a lower rate. ECF No. 21 at 2. In February of 2016, Plaintiffs contacted Defendant New Penn and chose to refinance their home. *Id.* Defendant New Penn provided Plaintiffs with numerous documents outlining the terms of the loan. *Id.* at 3.

---

[2] 12 U.S.C. § 2601 *et seq.*

Defendant New Penn also required Plaintiffs to execute a variety of documents including a South Carolina Attorney and Insurance Preference Disclosure. *Id.* Plaintiffs chose attorney Whit Bishop as their closing attorney. *Id.*

Defendant New Penn also provided Plaintiffs with documents that indicated that an affiliated company, Defendant Avenue 365 Lender Services ("Avenue 365"), could be used as the closing company, although Defendant Avenue 365's exact role was not explained. *Id.* Plaintiffs' closing was delayed and some of the terms were changed by Defendants. *Id.* During the process of obtaining the loan, Plaintiffs worked with Defendant Jake Brown, a mortgage consultant affiliated with the other Defendants. *Id.* Defendant Jake Brown "repeatedly assured [Plaintiffs] that everything was taken care of, the [Plaintiffs] would be protected, and the loan and its terms were good for them." *Id.* However, Defendant Jake Brown "never told [Plaintiffs] that they had their choice of their own closing company or Title Company or explained what that meant." *Id.* No one working for Defendants asked Plaintiffs about their choice of attorney or Title Company even though Plaintiffs had chosen attorney Whit Bishop. *Id.* at 4.

During the process of obtaining the loan, Plaintiffs began receiving correspondence and documents from Defendant Avenue 365. *Id.* On the date of the closing, Plaintiffs were visited at their home by attorney Ryan Breckenridge, who was sent by and on behalf of Defendants, to handle the closing. *Id.* at 4. Mr. Breckenridge did not identify himself as an attorney,[3] instead introducing himself as a notary. *Id.* Plaintiffs later

---

[3] Mr. Breckenridge has been publicly reprimanded by the Supreme Court of South Carolina for similar behavior.

3

learned that Defendant Avenue 365 hired Mr. Breckenridge through a third party attorney placement firm. *Id.* at 5.  Therefore, Plaintiffs assumed the closing documents had been sent to Whit Bishop. *Id.* Plaintiffs later learned that the documents were never sent to Whit Bishop, and Defendants required Plaintiffs, who were unrepresented, to sign a new mortgage loan application, a new good faith estimate, a non-durable power of attorney, a hold harmless provision, a privacy policy, a legal description of the property, a borrower compliance agreement, and an agreement to reimburse Defendant Avenue 365 for any and all attorneys' fees and costs. *Id.* After the closing, Plaintiffs were directed to make their mortgage payments to Defendant Shell Point, which they have continued to do. *Id.* at 4.

Based on these allegations, Plaintiffs' Second Amended Complaint asserted the following causes of action: (1) fraud in the inducement, fraud, and constructive fraud; (2) violation of the SCUTPA; (3) negligence; (4) violation of the South Carolina CPC; (5) breach of fiduciary duty; (6) violation of RESPA; and (7) violation of the "Licensing of Mortgage Broker Act."[4]  On July 11, 2017, Defendants filed an Answer.  ECF No. 22.  On August 2, 2017, Defendants filed a Partial Motion for Judgment on the Pleadings, which is the Motion currently before the Court.  ECF No. 23.  Plaintiffs filed a Response in Opposition on September 7, 2017, and Defendants filed a Reply on September 14, 2017.  ECF Nos. 30, 31.

---

[4] S.C. Code Ann. § 40-58-10 *et seq.*

4

On September 17, 2018, the Court issued an Order ruling on Defendants' Partial Motion for Judgment on the Pleadings. ECF No. 47. The Court: (1) denied Defendants' Motion as to Plaintiffs' claims for fraud, constructive fraud, and fraud in the inducement; (2) granted Defendants' Motion as to Plaintiffs' claims under the Mortgage Brokers Act; (3) granted Defendants' Motion as to Plaintiffs' SCUTPA claim, but afforded Plaintiffs ten days to amend their pleadings to plausibly plead a claim for damages; (4) granted in part and denied in part Defendants' Motion as to Plaintiffs' negligence claim, permitting the claim to proceed as to whether Defendants were negligent in their assumption of the duty to properly choose and supervise a closing attorney; (5) granted in part and denied in part Defendants' Motion as to Plaintiffs' claims under Section 37-10-102 of the South Carolina Code, allowing the claim to proceed as to all defendants except Defendant Jake Brown; (6) denied Defendants' Motion as to Plaintiffs' claims under Section 37-10-108 of the South Carolina Code; and (7) denied Defendants' Motion as to Plaintiffs' claim for breach of fiduciary duty. ECF No. 47.

On September 28, 2018, Plaintiffs filed a Third Amended Complaint, and Defendants filed an Answer. ECF Nos. 48, 49. On November 16, 2018, Plaintiffs filed a Motion for Partial Summary Judgment, and Defendants filed a Motion for Summary Judgment. ECF Nos. 54, 55. The Motions were fully briefed by the parties, ECF Nos. 60, 62, 64, 65, and the Court heard argument on the Motions on July 22, 2019. As indicated above, the Court denied Plaintiffs' Motion for Partial Summary Judgment during the hearing and took Defendants' Motion for Summary Judgment under advisement. ECF No. 76. Accordingly, Defendants' Motion for Summary Judgment is ripe for review.

5

## **LEGAL STANDARD**

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. To that end, "Rule 56 states "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252.

Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Further, Rule 56 provides in pertinent part:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

The Court often deals with voluminous summary judgment motions filed by parties in complex cases. For that reason, the District Court for the District of South Carolina has implemented Local Rule 7.05(A)(4), which requires a memorandum opposing a motion for summary judgment to have a "concise statement of the material facts in dispute with reference to the location in the record." The filings related to the Motion before the Court are voluminous and contain many attachments and exhibits. However, it has been

7

inordinately difficult for the Court to discern what facts the parties believe are in dispute due to a lack of specific citation in portions of Plaintiffs' Response in Opposition to Defendants' Motion. Nonetheless, the Court has exhaustively reviewed the filings and attachments in this case and rules as follows.

## I. Actual Damages

Defendants first contend that "Plaintiffs cannot point to any evidence that they have suffered actionable damages in this case," and seek summary judgment on this basis. In response, Plaintiffs outline a number of alleged damages. However, the only actual pecuniary damages that Plaintiffs can plausibly pursue are interest on automobile, credit, and mortgage loans from April 1–28, 2016, while the loan was delayed. Of course, Defendants have a viable argument that the delay in processing the loan was due to the conduct of Plaintiffs. However, that is a question for a finder of fact, and all claims are not subject to dismissal simply on the basis of the lack of damages. As detailed below, the failure to offer any evidence of damages is fatal to several claims.

## II. Plaintiffs' Claims Under the Consumer Protection Code

Defendants next seek summary judgment on Plaintiffs' claims for violations of the CPC. Plaintiffs have two separate claims under the CPC—violation of Section 37-10-102 of the South Carolina Code ("Section 102") for violating their attorney preference and violation of Section 37-10-108 of the South Carolina Code ("Section 108") for unconscionability. The Court addresses these in turn.

### A. Section 102 - Bona Fide Error

As to the Section 102 claim, Defendants contend that their alleged violation of the attorney preference statute was a "bona fide error." Section 37-10-105(B) of the South

8

Carolina Code exempts creditors from liability "if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid the error." Fundamentally, this is a factual determination for a jury to make, and there is competing evidence on the issue from the parties. Accordingly, Defendants' Motion is denied as to Plaintiffs' Section 102 claim.

### B. Section 108 – Unconscionability

As to the Section 108 claim, Defendants claim "there is no right of action under section 37-5-108 available to plaintiffs." ECF No. 55 at 13. The Court has previously ruled that "Plaintiffs have pled sufficient factual allegations to state a plausible claim for violation of Section 108." ECF No. 47 at 14. However, Defendants' argument is tailored to the specific transaction at issue in this case and addresses the limitation in Section 37-3-105 of the South Carolina Code, which excludes "loan[s] secured by a first lien or equivalent security interest in real estate" from the definition of consumer loans in Section 108. Plaintiffs offer no argument in response to this and appear to have abandoned this claim. In absence of any specific articulable facts from Plaintiffs, the Court concludes that Defendants' Motion should be granted as to Plaintiffs' Section 108 claim.

### III. Plaintiffs' Claim Under the South Carolina Unfair Trade Practices Act

Defendants argue that Plaintiffs' SCUTPA claim should be dismissed because Defendants' actions do not constitute unfair trade practices, Plaintiffs cannot show that Defendants engaged in any unfair or deceptive acts, and Plaintiffs have failed to show that Defendants' actions are capable of repetition and have an impact upon the public interest. After reviewing the applicable law and evidence before the Court, the Court

9

concludes that Plaintiffs have failed to offer any specific, articulable facts that demonstrate that Defendants' actions in this case have any impact on the public interest. Plaintiffs have not offered any evidence that Defendants violated the Attorney Preference statute in the past, nor have they identified any evidence that Defendants' policies and procedures, which are well documented by Defendants (but were violated in this case), are insufficient to prevent this from occurring in the future. Accordingly, the Court grants Defendants' Motion as to Plaintiffs' SCUTPA claim.

## IV. Plaintiffs' Negligence Claim

Next, Defendants contend that Plaintiffs have failed to establish the elements of breach or damages. In its prior Order, the Court found that Defendants "assumed a duty to use due care in [the] selection and operation" of choosing closing counsel. ECF No. 47 at 13. While Plaintiffs contend that Mr. Breckenridge had a spotty ethical history, Plaintiffs have offered no evidence that Defendants failed to use due care in the selection of closing counsel. Indeed, as detailed above, there are no direct damages flowing from Defendants' selection of PCN/Breckenridge as the loan was properly closed. While Plaintiffs have valid claims for damages as set forth above, those damages were not caused by any breach by a Defendant in this case. Accordingly, Defendants' Motion is granted as to Plaintiffs' negligence claim.

## V. Plaintiffs' Fraud Claims

Plaintiffs' claims for Fraud in the Inducement, Fraud, and Constructive Fraud are based on two related factual allegations: (1) that Defendants failed to disclose the relationship they had with each other to Plaintiffs and (2) that Plaintiffs' attorney preference choice was ignored. Although Defendants raise a number of issues at to the

fraud claims, the Court concludes that Plaintiffs' claims fail as a matter of law because they have not offered any specific, articulable evidence of any misrepresentation or fraudulent omission made by Defendants. Put simply, Plaintiffs cannot point to any specific false statements made by the Defendants. While Mr. Breckenridge may have misrepresented that he was a notary and not a closing attorney, he is not a named Defendant in this case. Nor is he an employee of any named Defendant. Rather, he is an employee or agent of a third-party contractor who also was not named by the Plaintiffs. Plaintiffs have not directed the Court to any specific representations made by Defendants that Mr. Bishop would be at the closing, nor have they directed the Court to any false representations about the business arrangements between Defendants. Accordingly, the Court grants Defendants' Motion as to Plaintiffs' fraud claims.

## VI. Plaintiffs' Breach of Fiduciary Duty Claim

Defendants next move for summary judgment on Plaintiffs' Breach of Fiduciary Duty claim. The Court previously held that Plaintiffs alleged that "Defendants, working in concert, invited a fiduciary obligation through their business model and promises to guide and counsel borrowers through the loan process." ECF No. 47 at 15. Thus, the Court held that Defendants voluntarily undertook a fiduciary duty by agreeing to "guide and counsel" Plaintiffs through the closing process. Plaintiffs have offered evidence that they incurred financial damages due to the delay in closing the loan. While Defendants have pointed to compelling evidence that the delay was due to Plaintiffs' inaction, ultimately it is for a jury to resolve whether Plaintiffs incurred damages due to Defendants' alleged breach of their fiduciary duty. Accordingly, Defendants' Motion is denied as to Plaintiffs' Breach of Fiduciary Duty claim.

## VII. Plaintiffs' Real Estate Settlement Procedures Act Claim

Defendants also contend that the Court should grant summary judgment on Plaintiffs' RESPA claim. As Defendants correctly note, Plaintiffs must prove three elements to recover for a violation of RESPA: (1) a payment or a thing of value; (2) made pursuant to an agreement to refer settlement business; and (3) an actual referral. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 427 (6th Cir. 2009). However, RESPA specifically excludes from liability "affiliated business arrangements" as long as "a disclosure is made of the existence of such an arrangement to the person being referred," a written estimate of the charge is provided, the person is not required to use any particular provider of settlement services, and the only value received by the affiliates are payments for services rendered and "a return on the ownership interest." 12 U.S.C. § 2607(c).

Here, Defendants contend that their business relationship does not violate RESPA, but in the alternative, that the conduct falls within the statutory safe harbor. Plaintiffs argue that Defendant Avenue 365's monthly payment of $25,000 to Defendant New Penn "has not been connected to any goods or facilities actually furnished or for services actually performed." ECF No. 62 at 26. Additionally, Plaintiffs state "New Penn automatically sends all of its business to Avenue 365 for the lucrative title insurance commission." After reviewing the applicable law and the facts before the Court, the Court concludes that Defendants' Motion should be granted on this claim.

Defendants have offered specific evidence that they disclosed their business relationship to Plaintiffs, made Plaintiffs aware of the fees, and did not require Plaintiffs to use Defendant Avenue 365. In fact, Plaintiffs acknowledge that "Defendants made

affiliated business disclosures and explicitly stated that Plaintiffs were not required to use Avenue 365." ECF No. 62 at 26 (internal quotation marks omitted). As to the $25,000 payment, Defendants have offered evidence that it covered bona fide business expenses and administrative fees. *See* ECF Nos. 55-18, 55-47, 55-48. Plaintiffs have offered no specific evidence to the contrary. Accordingly, Defendants' Motion is granted as to Plaintiffs' RESPA claim.

**VIII.    All Claims Against Shell Point**

Finally, Defendants contend that all claims against Shell Point should be dismissed because there is no evidence of Shell Point's involvement in the circumstances of this case. Plaintiffs respond by claiming that Shell Point is an alter ego of several other Defendants. However, Plaintiffs have offered no actual evidence that would warrant finding amalgamation. The evidence demonstrates that Shell Point is a division of Defendant New Penn, who services the loan. Plaintiffs have offered no evidence that there have been any problems with their monthly payments or servicing the loans. Accordingly, Defendants' Motion is granted as to Shell Point.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Motion, ECF No. 55, is **GRANTED in part** and **DENIED in part** as set forth above. Specifically, Defendants' Motion, ECF No. 55, is **GRANTED** as to all claims with the exception of Plaintiffs' claims for Breach of Fiduciary Duty and violation of Section 102 of the CPC.

IT IS SO ORDERED.

                                                s/Donald C. Coggins, Jr.
                                                United States District Judge

September 26, 2019
Spartanburg, South Carolina